Willie MITCHELL, Jr., Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13653.

Court of Criminal Appeals of Oklahoma.

Nov. 3, 1965.

Rehearing Denied Dec. 22, 1965.

Malcolm Baucum, Oklahoma City, for plaintiff in error.

Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Plaintiff in Error, Willie Mitchell, Jr., hereinafter referred to as defendant, was charged by information in the District Court of Oklahoma County with the crime of Robbery First Degree. He was tried by a jury, found guilty, and his punishment assessed at Five Years in the penitentiary. From that judgment and sentence he has timely appealed to this Court alleging several assignments of error, which will be herein discussed in order.

The evidence presented by the State established that Maurice Seigle of 2716 N. W. 23 Street, a retired gentleman in his 70's, and his lady friend (now Mrs. Seigle) watched television on the night of April 17, 1964; that he went to bed about ten o'clock. The next thing he remembers is hearing a noise of breaking glass, and then was knocked unconscious. Mrs. Seigle, who then lived in the other side of the duplex, said she was awakened by this noise about 3 A.M. in the morning of April 18, 1964. She heard some moaning from Mr. Seigle's bedroom and called police. Neither could identify who was in the room. Detective John Rowden testified that, based on information he and his partner received from an informer, he went to a garage behind the Butterfield Rest Home located 3300 N.W. 23 Street, at approximately 3:30 A.M. They observed a 1951 Black Chevrolet belonging to Harold Clevis Taylor parked in the driveway. They immediately went into the garage, and saw the defendant and Taylor lying on some beds in the far corner of the garage, and that they appeared to be asleep. That defendant had a chrome plated .38 cal. Smith-Wesson revolver in his *gloved* hand; that he was laying on his arm as if asleep with the weapon in an upright position. They took the weapon away from him and placed him under arrest. They found a large crowbar approximately 20 inches long, a screwdriver, and a flashlight under the bed on which defendant was laying. They then searched defendant's person and found an unloaded .22 cal. Walther Automatic in his pocket. Concealed in the front part of his pants inside his underwear, they found a checkbook on the bank of Hinton, Oklahoma; and one leather billfold with identification of the victim. That they then searched Taylor and found one Norelco razor, one yellow gold man's diamond ring, one gold band wristwatch. All of these things were identified as belonging to Mr. Seigle; and that they were in his apartment before he was knocked unconscious. Officer Stanfill testified, in substance, that he talked to defendant the next morning; and that the

defendant advised him that he had been at the Capri Club, and that at approximately 3 A.M. Taylor was driving by as he was crossing the street and stopped and told defendant he was drunk, and that he wanted the defendant to take him home. The defendant got in the car, said he didn't know where he was going and Taylor directed him. That he went to a certain location where he was later arrested.

There were two statements introduced in evidence, and from these statements, the defendant stated to the police officers that Taylor was trying to sell him a gun, and while he was looking at it, fell asleep, and the next thing he knew, he was being arrested. He further stated that Taylor gave him a billfold and told him it was "hot", and he concealed it in the front of his pants. He stated that the weather was warm, and he wasn't covered up, but he put on gloves to look at the gun. This was his account of how he happened to be in the garage with Taylor, in possession of the stolen articles.

■ Defendant's first contention of error is that the evidence is insufficient to sustain the verdict of Conjoint Robbery. He complains that the evidence of the state proved that 'someone' entered Mr. Seigle's home, attacked, and robbed him—but that there is no direct evidence that two persons committed the crime. The trial court carefully instructed the jury on the point of Conjoint Robbery, and it was submitted to them as to whether the robbery was committed by one or two persons. The evidence, which was circumstantial, but overwhelming, placed the defendant *within 6 blocks of the robbery only 30 minutes later in possession of the articles stolen,* and with a .38 cal. gun clutched in his *gloved* hand; with him, a well-known police character as his companion, in possession of the other articles stolen. The most reasonable inference to be drawn from this is that they were together in the robbery. The only evidence to the contrary was defendant's own statement, which the jury evidently chose not to believe.

Defendant further complains that the state introduced in the testimony of Officer Stanfill, defendant's statement taken at police headquarters; and that this is an "exculpatory statement": and that the state was bound by it, as no evidence was introduced to refute it. In his brief, counsel states: "This is an exculpatory statement and the State is bound", citing the case of Dean v. State, Okl.Cr., 381 P.2d 178. This writer is very familiar with the Dean case, supra, and had defendant gone a little further, the following appears therein:

"In order for a statement to come within the category of an exculpatory nature, it must be a tangible, affirmative, decisive, factual matter capable of specific disproof, and not extending to a mere recitation of innocence embroidered in the plea of not guilty."

In the case at bar, two statements were introduced, and there were several discrepancies in defendant's story in each. The determination of the truth and veracity of the defendant and of the witnesses would be for the jury to decide.

The Dean case, supra, stated further:

"Where the state introduces in evidence the confession of accused, it is bound by exculpatory statements contained therein *unless* they are shown by the evidence to be untrue; but the falsity of such exculpatory statements may be shown by circumstances as well as direct evidence." (Emphasis ours)

Further, the trial court instructed the jury, even giving defendant's requested instruction on exculpatory statements. In the body of the Dean case, supra, in quoting the Texas Court of Criminal Appeals, it was stated:

"It appears * * * that, if, in proving its case, the state put before the jury statements of the accused, which, if true, would entitle him to an acquittal, there should be some direct and

positive instruction given to the jury to the effect * * *. In other words, the right of accused in such instance should be stated to the jury in plain and unmistakable language, so that they may know that the defendant is entitled to an acquittal if such exculpatory statements be not disproved or shown to be false by other testimony."

This Court is of the opinion that, the jury was properly instructed regarding the so-called exculpatory statement of accused.

Defendant's second proposition of error is that the crime committed was not robbery or any lesser or included offense. He bases this on the circumstance that the victim was knocked unconscious and therefore didn't know the property was being taken, quoting Title 21, O.S.A., § 796:

"The taking of property from the person of another is not robbery, when it clearly appears that the taking was fully completed without his knowledge."

This statute has never been specifically construed by our Court, as it has not been attempted to be technically applied in a situation like this.

In our opinion, this Statute was specifically designed to distinguish between the robbery, larceny and burglary statutes. The heading of § 796 states: 'Taking secretly not robbery'. This is a clear indication of the intention of the statute to distinguish a pickpocket from a robber.

The stealthy or secret taking of property from the person of another before the victim is aware of what is being done is not robbery. This is the intended distinction in the definition of robbery in § 796 supra.

To constitute robbery the taking of the property must be accomplished by force *or* by putting the victim in fear. The force *or* intimidation is the gist of the offense.

In 57 L.R.A. 432 and 8 A.L.R. 359 are annotations wherein authorities are

cited in support of the rule that if the taking of property from the person of another is accomplished by force, although the victim does not know what is being done, it is, nevertheless, robbery.

In a South Dakota case, State v. Stecker, 79 S.D. 79, 108 N.W.2d 47, with a statute similar to our § 796, it was stated:

"It was not necessary to a conviction to show that the victim was aware at the time that he was being robbed. Force or fear must be used to obtain possession of the property or to prevent or overcome resistance to the taking."

It is stated in the state's brief, quoting from 2 Wharton's Criminal Law and Procedure (1927), § 554, at pg. 256:

" * * * Thus it is possible to be guilty of robbery of a person knocked unconscious before he realized that the defendant intended to rob him or to use force. * * * "

And, on the lack of knowledge of the defendant, the state further quotes Whartons, § 554, at pg. 256:

"The element of 'against the will' is satisfied by proof that the taking was 'without the consent' of the victim. Thus robbery is committed when the taking is accomplished by the use of force although the victim was deceived as to the purpose of the force and did not apprehend or perceive that a robbery was intended or being committed. But the mere taking of goods from an unconscious person, without force or the intent to use force, is not robbery, *unless such unconsciousness was produced expressly for the purpose of taking the property in charge of such person.*"

This Court is of the opinion that this matter was settled in Oklahoma in the case of Jennings v. State, (1947) 84 Okl.Cr. 135, 179 P.2d 693:

"Where one commits the crime of robbery by means of force and fear, the fact that person robbed is knocked unconscious by an instrument in the hands of defendant and his billfold and a large sum of money is taken from his person while he is unconscious, does not reduce the crime to larceny from the person."

Defendant contends that the Jennings case should be overruled, that the Court did not consider Title 21, O.S.A., § 796 when they made the above ruling. To the contrary, § 796 would not be applicable in the Jennings case, nor is it applicable in the instant cause.

Defendant's third proposition of error is that the state's evidence failed to prove that the force or fear was precedent to or contemporaneous with the taking of the property.

This Court is of the opinion that this point is not well taken, as the testimony of the victim placed all the items in his possession before he went to sleep; he heard a breaking of glass in his door; and was knocked unconscious. Said items were found 30 minutes later in defendant and Taylor's possession. There can be no other inference drawn but that this force was precedent to the taking of the property. The degree of force was so severe it rendered the victim unconscious for four days.

Defendant's fourth proposition alleges that the state failed to sustain the allegations contained in the information. The information charges:

" * * * That is to say, the said defendants, acting conjointly and together in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there wilfully, unlawfully and feloniously make an assault at and upon one MAURICE SEIGLE, by means of threatning the said MAURICE SEIGLE, and by means of said assault so made as aforesaid, they, the *said defendants did then and there and Thereby produce in the mind of him,*"

the said MAURICE SEIGLE, great fear of immediate injury to his person, sufficient to and which did overcome all resistance on the part of the said MAURICE SEIGLE, and while the said MAURICE SEIGLE was laboring under such fear and restraint so produced as aforesaid, did unlawfully, wilfully, wrongfully and feloneously take, steal and carry away from the person and immediate presence * *".

This being a case wherein the victim was knocked unconscious, fear was unnecessary, as he was overcome by force. The better form to have used to conform to the evidence could have read:

"* * * did wrongfully and feloniously rob one MAURICE SEIGLE, by wrongfully taking and carrying away certain money and personal property of value belonging to and in the possession of said MAURICE SEIGLE, and in his immediate presence, without his consent and against his will, said robbery being accomplished by said defendant by means of force and violence used against the said MAURICE SEIGLE by then and there knocking him unconscious, and then and there wrongfully taking and carrying away the money and property aforesaid, * * *."

The actual wording of the element of fear in the information, instead of force has been ruled on by this Court in the case of Thoreson v. State, 69 Okl.Cr. 128, 100 P.2d 896:

"If an information alleges force and violence, in charging robbery, it need not allege putting in fear, or vice-versa." (Emphasis ours)

The information in the instant case was sufficiently worded to inform defendant of the charge of robbery in the language of the statute, and to insure that he will not again be put in jeopardy for this particular crime. A difference is not material or essential unless it is such as might mislead the defense or expose the defendant to being put twice in jeopardy for the same

offense. See, McCoy v. State, 92 Okl.Cr. 412, 233 P.2d 778. Further, the instructions of the trial court minutely described and limited the charge to Conjoint Robbery.

■ Defendant's final contention is that the Assistant County Attorney prejudiced the defendant by a certain remark in his closing argument, at pg. 215 of the case-made:

"Look at the end justice of turning a guilty man loose. Look at him! You let him rape and ravage and ruin our community and destroy it.

MR. BAUCUM: Your Honor, I am going to ask for a mistrial on the basis of that statement, 'rape and ravage'. Certainly no evidence at all on which the County Attorney could make that type of statement, I don't care how emotionally upset he might be.

THE COURT: I will deny your motion, but I am going to admonish the jury not to—to utterly disregard the statement made by the County Attorney of rape and ravage. There is no evidence of any such thing being involved in this case."

This remark by the Assistant County Attorney was highly improper, and in a close case certainly would constitute reversible error. However, this Court has passed on this question many times, as in the case of Payne v. State, Okl.Cr., 403 P.2d 791:

"Where objection to improper argument is sustained and jury is admonished not to consider argument, such may not constitute reversible error."

This is true, *except* when such remarks or argument cannot be cured by a withdrawal of same; or where it is apparent the jury's verdict was inflamed with an excessive sentence.

However, counsel contends that since defendant had no previous record, this remark bordered on reversible error, and prejudiced defendant.

■ This Court is of the opinion that since the trial judge admonished the jury

not to consider the remark, it was not reversible error; and since the defendant received the minimum sentence, this Court is of the further opinion that the jury did not consider the remark in their deliberations.

 However, a prosecuting attorney is a public officer acting in a quasi-judicial capacity. It is his duty to use all fair, honorable, reasonable, and lawful means to secure the conviction of the guilty who are or may be indicted in the courts of his judicial circuit. He should see that they have a fair and impartial trial and avoid conviction contrary to law. Nothing should tempt him to appeal to prejudice, to pervert the testimony, or make statements to the jury which, whether true or not, have not been proved.

For the reasons above set forth, the judgment and sentence of the trial court is hereby affirmed.

BUSSEY, P. J., and TOM BRETT, J., concur.