**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 16, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CALVIN D. PATILLAR,

Defendant - Appellant.

No. 09-5067

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 4:08-CR-00197-JHP-1)**

---

Submitted on the briefs:[*]

Art Fleak, Tulsa, Oklahoma, for Defendant - Appellant.

Thomas Scott Woodward, Acting United States Attorney, and Matthew P. Cyran, Assistant United States Attorney, Tulsa, Oklahoma, for Plaintiff - Appellee.

---

Before **HARTZ**, **SEYMOUR**, and **EBEL**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Calvin Patillar pleaded guilty to robbery and to discharging a firearm in furtherance of robbery. *See* 18 U.S.C. § 1951(a); *id.* § 924(c)(1)(A)(iii). Both offenses were committed on December 2, 2008. The United States District Court for the Northern District of Oklahoma sentenced him to 300 months' imprisonment. Mr. Patillar's sole argument on appeal is that the district court erred in concluding that he had two prior Oklahoma convictions of crimes of violence, which qualified him as a career offender under the 2008 edition of the United States Sentencing Guidelines. *See* USSG § 4B1.1. He contends (1) that his prior offense of larceny from the person was not sufficiently purposeful, violent, and aggressive to be a crime of violence and (2) that his prior robbery offense was too stale to be a crime of violence because he would have served his entire term of imprisonment for that offense more than 15 years before committing his federal offenses had Oklahoma acted with the requisite diligence in revoking his probation. We have jurisdiction under 18 U.S.C. § 3742(a) and affirm.

We review de novo the district court's interpretation of the guidelines. *See United States v. Rooks*, 556 F.3d 1145, 1146–47 (10th Cir. 2009). The definition of *career offender* includes a defendant who "has at least two prior felony convictions of . . . a crime of violence . . . ." USSG § 4B1.1(a)(3). A *crime of violence* is

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
(1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 4B1.2(a).

Mr. Patillar was convicted in 1997 for larceny from the person and in 1985 for robbery with firearms.  We first address the larceny offense.

The Oklahoma offense of larceny from the person occurs when "property, although not of value exceeding Fifty Dollars ($50.00) in value, is taken from the person of another."[1]  Okla. Stat. Ann. tit. 21, § 1704(2) (1997).  To decide whether the offense is a crime of violence, we examine only the statutory elements of the offense, not the particular facts underlying the conviction.  *See Rooks*, 556 F.3d at 1147.[2]  We agree with Mr. Patillar that larceny from the person does not satisfy USSG § 4B1.2(a)(1), which includes as a crime of

---

[1]An amendment in 2001, which has no impact on our analysis, raised the statutory threshold to $500.  *See* Okla. Stat. Ann. tit. 21, § 1704(2) (2009).

[2]At the time of Mr. Patillar's offense, there were two types of grand larceny in Oklahoma:  (1) larceny of property worth more than $50, Okla. Stat. Ann. tit. 21, § 1704(1) (1997), and (2) larceny from the person, *id.* § 1704(2).  Mr. Patillar contends that "Oklahoma did not set out which part of the [larceny] statute the charges were filed under."  Reply Br. at 9.  But the information specified Mr. Patillar's crime as larceny from the person, as did the document entitled "Findings of Fact - Acceptance of Plea" signed by the Oklahoma judge, *see* Aplt. Br. Attach. 1.  Therefore, there is no ambiguity regarding the crime of which Mr. Patillar was convicted.

violence an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  Nor is larceny from the person one of the offenses enumerated in either § 4B1.2(a)(2) (listing "burglary of a dwelling, arson, . . . extortion, [or an offense that] involves use of explosives"), or the application note, *see id.* § 4B1.2 cmt. n.1 (listing "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, [or] robbery").  Therefore, larceny from the person is a crime of violence only if it falls within § 4B1.2(a)(2)'s residual clause—that is, if it "otherwise involves conduct that presents a serious potential risk of physical injury to another."

The residual clause in § 4B1.2(a)(2) is identical to language in the Armed Career Criminal Act (ACCA).  *See* 18 U.S.C. § 924(e)(2)(B)(ii).  The Supreme Court has recently interpreted that language in the ACCA context, *see Begay v. United States*, 128 S. Ct. 1581 (2008), and its reasoning informs our reading of the guidelines, *see Rooks*, 556 F.3d at 1150 ("We assume [*Begay*'s] reasoning applies with equal force to determining whether a predicate offense falls within § 4B1.2(a)(2)'s residual clause, . . . .").  *Begay* held that the residual clause covers crimes that are "roughly similar, in kind as well as in degree of risk posed," to the enumerated offenses of burglary, arson, extortion, and crimes involving use of explosives, 128 S.Ct. at 1585, which "all typically involve purposeful, violent, and aggressive conduct," *id.* at 1586 (internal quotation marks omitted); *see Chambers v. United States*, 129 S. Ct. 687, 692 (2009).

-4-

Larceny from the person is purposeful because it requires "intent to deprive another" of his property. Okla. Stat. Ann. tit. 21, § 1701 (1997). And when the taking is from a person, the conduct is violent and aggressive because it creates a significant risk of confrontation between thief and victim. *See Rooks*, 556 F.3d at 1151 ("The risk of confrontation [is an] indicator of violent and aggressive conduct"). Our fellow circuits have consistently interpreted the residual clause of § 4B1.2(a)(b) as encompassing larceny from the person. *See United States v. De Jesus*, 984 F.2d 21, 23–25 (1st Cir. 1993); *United States v. Smith*, 359 F.3d 662, 665–66 (4th Cir. 2004); *United States v. Hawkins*, 69 F.3d 11, 13 (5th Cir. 1995); *United States v. Payne*, 163 F.3d 371, 374–75 (6th Cir. 1998); *United States v. Howze*, 343 F.3d 919, 923–24 (7th Cir. 2003); *cf. United States v. Thrower*, 584 F.3d 70, 73–75 (2d Cir. 2009) (interpreting residual clause in ACCA to encompass larceny from the person); *United States v. Griffith*, 301 F.3d 880, 885 (8th Cir. 2002) (same); *United States v. Jennings*, 515 F.3d 980, 989 (9th Cir. 2008) (same). Accordingly, we affirm the district court's treatment of larceny from the person as a crime of violence.

The district court also determined that Mr. Patillar's Oklahoma offense of robbery with firearms was a crime of violence. He was convicted as an adult in 1985 of committing the offense in 1984 (when he was 16 years old). Mr. Patillar does not dispute that robbery is a crime of violence. But he argues that the offense is too stale to be considered for career-offender status.

Under the guidelines a prior conviction can be considered if it led to "any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of [the] fifteen-year period" before he committed the offenses for which he is now being sentenced. USSG § 4A1.2(e)(1); *see also id.* § 4B1.2 cmt. n.3. If a defendant's probation was revoked and his total term of imprisonment exceeded one year and one month, the "date of last release from incarceration on such sentence" determines whether his prior conviction falls within § 4A1.2(e)(1)'s window. *Id.* § 4A1.2(k)(2)(B)(i). Mr. Patillar committed his federal offenses on December 2, 2008. Hence, his 1985 robbery offense is a crime of violence if it resulted in his incarceration at any time after December 2, 1993. In 1985 Mr. Patillar was sentenced to eight years' imprisonment, with the last four years suspended. He was released in 1987; but in 1992 his parole was revoked and he was sentenced to four years' additional imprisonment, with two years suspended. He was not released until February 1994, bringing his 1985 conviction within § 4A1.2(e)(1)'s window by about two months.

Although Mr. Patillar acknowledges that his release occurred within 15 years of his federal offenses, he argues (as we understand his briefs) that the 1985 conviction is stale because he would have been released before December 1993 (and thus outside the 15-year window) if the state had not delayed for 16 months before taking action to revoke his suspended sentence. (He contends that the

application to revoke his probation was filed on March 19, 1990, and he was arrested on April 19, 1990, but that the state took no action until he moved for a speedy trial on August 6, 1991—16 months after his arrest.)  In essence, Mr. Patillar urges us to recognize a state-failure-to-act exception to § 4A1.2(e)(1).

We decline to do so.  Section 4A1.2(e)(1) directs the sentencing judge to consider "*any* prior sentence . . . *whenever* imposed, that resulted in the defendant being incarcerated during any part of [the] fifteen-year period." (emphases added).  Moreover, the application of § 4A1.2(k) does not turn on when or why a defendant's probation was revoked.  To accept Mr. Patillar's proposal would contravene the plain meaning of these provisions.  *Cf. United States v. Adams*, 403 F.3d 1257, 1260 (11th Cir. 2005) (refusing to recognize an exception when a state-court backlog allegedly caused defendant's sentence for a prior conviction to fall within § 4A1.2(e)(2)'s window, because doing so would contravene that provision's plain meaning); *United States v. Garcia*, 89 F.3d 362, 366–67 (7th Cir. 1996) (defendant not denied due process when the government delayed revoking his parole for two years, causing his incarceration to fall within § 4A1.2(e)(1)).  Also, our construction of the career-offender guideline is consistent with the common notion of a career offender—which is predicated not only on the seriousness of the offenses committed but also on how long the offender can live in freedom before committing another offense (regardless of

whether the period of freedom "should" have begun earlier).  The district court properly counted the Oklahoma robbery as a crime of violence.

We AFFIRM Mr. Patillar's sentence.  We GRANT Mr. Patillar's Motion to Strike the attachment to the government's brief.