**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

NEIL JASON WILFONG,

        Defendant - Appellant.

No. 12-6065
(D.C. No. 5:11-CR-00192-F-1)
(D. W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **EBEL**, and **MATHESON**, Circuit Judges.

Neil Wilfong appeals from his conviction and sentence for a violation of 18 U.S.C.

§ 922(g)(1) (felon in possession of a firearm). He contends the evidence supporting his

conviction should have been suppressed because it was collected after a GPS device was

placed on a pickup truck he confiscated from his mother. In addition to his novel, but

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

improbable, Fourth Amendment arguments, he claims he should not have been sentenced under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because he had not been previously convicted of three qualifying felonies. Finding no merit to his arguments, we affirm.

## I.

## BACKGROUND

On January 15, 2011, under the shadow of an outstanding arrest warrant for violating his supervised release following a federal prison term, Wilfong arrived at the home of his mother, Francis, and his brother, Eric, in Moore, Oklahoma. During a dispute with his brother, Wilfong pulled out a gun, pointed it at Eric, and then fired a shot into the floor at Eric's feet. He then took his mother's keys to her pickup and drove it away.

Eric reported the events and the theft of the pickup to the local police. A records check revealed Wilfong's outstanding federal warrant and prompted the police to contact Deputy United States Marshall Michael Albright and to give Eric his number. Albright spoke with Eric that night and left him a contact number in the event he might learn his brother's whereabouts. Eric telephoned Albright the next day to tell him his mother's pickup was seen in the parking lot of an apartment complex in Oklahoma City. Albright and officers from the Oklahoma City Police Department located the pickup and set up surveillance, but Wilfong did not return to it. Albright received permission from Eric to place a Global Positioning System (GPS) tracking device on the pickup. The next

morning, the GPS registered the pickup's movement. It eventually stopped in the parking lot of another apartment complex.

Albright and the other officers again set up surveillance. Between 11 a.m. and 12 p.m., Wilfong entered the pickup and drove away. Various law enforcement officials followed. When a police officer engaged his car lights to stop the pickup, Wilfong hit the gas and the chase was on.

Ignoring stop signs and zigzagging through traffic, Wilfong sped through neighborhood streets. Several times he turned the pickup around and headed straight for the police cars, causing them to pull onto the curbs to avoid collision. At one point, Deputy Sheriff Chuck McNeill, who was chasing Wilfong in a squad car directly behind the pickup, saw Wilfong look behind through the back window, brandish a gun, and smile. McNeill radioed what he had seen to the other officers.

Postman Timothy Baden heard the commotion as he delivered mail on his route. His large mail truck was on the right side of the road. As he sat inside, he saw the red pickup speed past and swerve to the right lane, almost colliding with his vehicle. He saw the driver lean over and toss something out of the passenger window. The object landed in the grass as the pickup sped off. The police followed the pickup with their lights flashing and sirens blaring. Baden left his vehicle and went to the place where he had seen the object land. It was a gun. He called 911 and took pictures of the gun with his phone. Wisely, he did not touch the gun as he waited for police to arrive.

In the meantime, Wilfong eluded the officers.  The pickup was found in the parking lot of yet another apartment complex with the driver's door wide open.  Wilfong was later apprehended at a house in Del City, Oklahoma.

A.    Procedural History

Wilfong moved to suppress the gun.  He claimed the placement of the GPS device was an illegal search.  The district judge concluded Wilfong did not have standing to challenge the search and denied the motion.

The jury found Wilfong guilty of being a felon in possession of a firearm.  Before sentencing, the prosecution notified him it would seek a sentencing enhancement under the ACCA based on four of his prior convictions.  He objected to the use of two of the convictions—larceny under Okla. Stat. tit. 21 § 1708 and using a telephone to communicate a bomb threat under 18 U.S.C. § 844(e)—because neither conviction was a crime of violence.  The judge disagreed and sentenced him to 300 months imprisonment.

**II.**

**DISCUSSION**

A.    Motion to Suppress

According to Wilfong, the gun should have been suppressed because his legitimate expectation of privacy in the pickup was violated when the GPS was attached to it.  He also argues, in much detail, that the officer's failure to return the pickup to his mother at the first opportunity was a form of entrapment by estoppel giving him standing to challenge the placement of the GPS on the pickup.  And, he says, because Eric Wilfong was not authorized to consent to the GPS placement, the gun was the fruit of an illegal

search.  *See United States v. Jones*, 132 S. Ct. 945, 948, 954 (2012) (concluding law enforcement violated the Fourth Amendment when they placed a GPS tracking device on the undercarriage of a vehicle for 28 days).

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment."  *United States v. Apperson*, 441 F.3d 1162, 1184 (10th Cir. 2006) (quoting *United States v. Katoa,* 379 F.3d 1203, 1205 (10th Cir.2004)). "[W]hether a defendant has standing to challenge a search is subject to de novo review." *United States v. Worthon*, 520 F.3d 1173, 1178 (10th Cir. 2008) (quotation marks omitted).

1. Entrapment by Estoppel

Wilfong argues that when law enforcement placed the GPS tracking device on the pickup rather than returning it to his mother, this empowered him to use the vehicle and thus gave him standing to object to the search.  He suggests this situation is analogous to entrapment by estoppel.

> The defense of entrapment by estoppel is implicated where an agent of the government affirmatively misleads a party as to the state of the law and that party proceeds to act on the misrepresentation so that criminal prosecution of the actor implicates due process concerns under the Fifth and Fourteenth amendments.  Thus, there must be an active misleading by a government agent, and actual reliance by the defendant which is reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.

*Apperson*, 441 F.3d at 1204-05 (citations and quotation marks omitted). Wilfong was not misled by an agent of the government. In fact, he had no contact with any government agent until he instigated a life-endangering high-speed chase. Wilfong's entrapment theory is unavailing.

2. Privacy Interest

As Wilfong had no privacy interest in the stolen vehicle, he lacked standing to challenge the search. *See Worthon*, 520 F.3d at 1183 (observing there is "no 'legitimate expectation of privacy'" when defendant is not in "'lawful possession or custody of the vehicle'") (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).

3. Consent to Search

Even if Wilfong had standing, his attempt to suppress the gun would likely be unsuccessful for several reasons. First, "[v]oluntary consent by a third party with actual or apparent authority is a well-established exception to the warrant requirement." *United States v. Benoit*, 713 F.3d 1, 8 (10th Cir. 2013) (citation omitted). "Apparent authority may be found if the facts available to the officer at the time of the search would lead a person of reasonable caution to believe that the consenting party had authority over the premises." *Id*. (citation and quotation marks omitted). Actual authority exists "if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes." *United States v. Andrus*, 483 F.3d 711, 716 (10th Cir. 2007) (quoting *United States v. Rith,* 164 F.3d 1323, 1328 (10th Cir.1999)). "Whether apparent authority exists is an objective, totality-of-the-circumstances inquiry into whether the facts available to the officers at the time they commenced the search would lead a

reasonable officer to believe the third party had authority to consent to the search." *Id*. at 716-17.

In this instance, Albright knew Eric lived with his mother. Eric had made the call to alert the authorities to the theft of the truck. After his mother signed the complaint, Eric had been the only contact on behalf of his mother, was actively involved throughout the investigation, and alerted the officers to the initial location of the truck after the theft. When Eric consented to the placement of the GPS, Albright could reasonably believe he had the authority to do so.

4.      Exception to Exclusionary Rule—Purged Taint

Second, even if the search is a Fourth Amendment violation under *Jones*, the exclusionary rule (including the fruit of the poisonous tree doctrine) is not constitutional law, but merely a means of insuring constitutional compliance by the executive branch. *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011); *United States v. Lee Vang Lor*, 706 F.3d 1252, 1257 (10th Cir. 2013). It should not be applied when the costs of application exceed the benefits of deterring the police. *Stone v. Powell,* 428 U.S. 465, 486-87 (1976). Accordingly, the exclusionary rule is subject to three exceptions recognized by the Supreme Court. The "independent source" exception allows the admission of evidence discovered by legal means through sources unrelated to the illegal search. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920). The "attenuated basis" exception applies when the nexus between the government's illegal conduct and the evidence is so weak that the taint of the illegality is dissipated. *Segura v. United States*, 468 U.S. 796, 805 (1984) (citing *Nardone v. United States*, 308 U.S. 338, 341 (1939)). Finally, the

"inevitable discovery" exception allows evidence to be introduced if the government can show the tainted evidence would inevitably have been discovered through lawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984).

This case is very similar to *United States v. Boone*, where we concluded the attenuated basis exception applied when the defendants engaged police in a high-speed chase. 62 F.3d 323, 326 (10th Cir. 1995). In *Boone*, the officer illegally searched a couple's car during a traffic stop. When the officer stepped away, they jumped into the car and drove off. *Id*. at 324. The officer twice told them to stop, but they ignored his commands. *Id*. A chase exceeding 100 miles per hour followed, during which five bottles "coated with phencyclidine ("PCP")" were thrown out the window of the car. *Id*. at 324-25. The defendants moved to suppress this evidence based on the illegality of the initial search. We recognized "the discovery of evidence subsequent to a primary illegality does not necessarily make the evidence the product of an 'exploitation of that illegality.'" *Id*. at 325 (quoting *Wong Sun v. United States,* 371 U.S. 471, 488 (1963). If evidence is abandoned under circumstances "sufficiently attenuated from . . . [an] illegal car search, then the evidence may be admitted at trial." *Id*.

We applied the three factors articulated in *Brown v. Illinois,* 422 U.S. 590, 603–04 (1975), by which a court may determine if seized evidence has been purged of the taint of the original illegality—(1) "the lapsed time between the illegality and the acquisition of the evidence"; (2) "the purpose and flagrancy of the official misconduct"; and (3) "the presence of intervening circumstances." *Boone*, 62 F.3d at 325-26. We found the third factor dispositive, writing:

It is true that Defendants threw the bottles out of the vehicle and onto the road while being chased, but police pursuit alone is not enough to "render [an] abandonment involuntary." Certainly, [the officer's] initial illegal search did not cause the Defendants to flee at a high rate of speed or to throw bottles of PCP onto the highway. Had the Defendants left the PCP bottles in the car, we recognize that, under the unappealed decision of the district court, the police officers would not have had the right to search the car and the PCP may not have been admitted into evidence. But that is not what occurred. Under these circumstances, it would be nonsensical to hold that [the] officer had no right to collect the evidence of drug possession that Defendants voluntarily discarded onto the highway. The district court did not err by denying Defendants' motion to suppress the PCP.

*Id.* at 326 (quoting *United States v. Morgan,* 936 F.2d 1561, 1570–71 (10th Cir. 1991) (defendant's decision to discard evidence without any mind to its protection from inspection qualifies as voluntary abandonment that is sufficient to attenuate)).

The facts occurring after the search here are nearly identical. The placement of the GPS did not cause Wilfong "to flee at a high rate of speed" or cause him to throw his gun out the window. *Id*. His conduct following the allegedly illegal search purged any taint on the evidence.

5.     Exigent Circumstances

Finally, it is not clear *Jones* would be dispositive here. *Jones* held the placement of a GPS device is a search if there is a trespass and the device is used to obtain information. But, the Supreme Court declined to consider whether the result would be the same if the "officers had reasonable suspicion, and indeed probable cause, to believe that [Jones] was a leader in a large-scale cocaine distribution conspiracy." *Jones*, 132 S. Ct. at 954. It concluded the government had forfeited that argument. *Id*. Here, Wilfong was subject to an existing warrant for his arrest, and the placement of the GPS was not to

obtain information connecting him to a crime but to find and arrest him. The situation looks much like exigent circumstances (an armed felon making an escape) since Wilfong was using the truck to escape arrest and could return any moment and drive away. *See Georgia v. Randolph,* 547 U.S. 103, n. 6, 126 S. Ct. 1515, 1524 n. 6, 164 L.Ed.2d 208 (2006) (listing "hot pursuit," "protecting the safety of . . . police officers," "imminent destruction [of a] building," "likelihood that [a] suspect will imminently flee," and "a fairly perceived need to act on the spot to preserve evidence" as exigent circumstances that might justify a warrantless search of a residence).

6. Summary

Even if Wilfong had standing, his claim the gun must be suppressed is almost certainly without merit.

B. Armed Career Criminal Act

We now consider whether his convictions for larceny under Okla. Stat. tit. 21 § 1708, and using a telephone to communicate a bomb threat under 18 U.S.C. § 844(e), qualify as sentence enhancing crimes under the ACCA. Our review is de novo. *United States v. Washington*, 706 F.3d 1215, 1217 (10th Cir. 2012), *cert. denied*, 2013 WL 1758701 (S. Ct. May 20, 2013).

Ordinarily, the maximum sentence for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), is 10 years of imprisonment. *See* 18 U.S.C. § 924(a)(2). Under the ACCA, however, three (or more) previous convictions for a violent felony or serious drug offense will increase the punishment to a minimum term of 15 years. *See* 18 U.S.C.

924(e). The ACCA defines a violent felony as a crime punishable by more than one year of imprisonment that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The Supreme Court has directed the use of a categorical approach to determine whether an offense is a violent felony under the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii):

> Under this approach, we look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction. That is, we consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.

*Sykes v. United States*, 131 S. Ct. 2267, 2272 (2011) (quoting *James v. United States,* 550 U.S. 192, 202 (2007)).

Wilfong concedes he has been convicted of two violent felonies for assault with a dangerous weapon. The government claims both of the additional convictions it has enumerated qualify as enhancing convictions under the ACCA. However, only one additional conviction was necessary to justify the 15-year minimum, so we look to the clearer conviction. We follow our precedent in *United States v. Patillar*, 595 F.3d 1138 (10th Cir. 2010), and conclude his conviction for larceny at night is a violent felony.

Oklahoma defines larceny as "the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof." Okla. Stat. tit. 21 § 1701. Wilfong was convicted for a violation of Okla. Stat. tit. 21 § 1708, which provides:

> When it appears upon such trial, that such larceny was committed by stealing in the night time, from the person of another, the offender shall be guilty of a felony punishable by imprisonment in the State Penitentiary not exceeding ten (10) years.

Larceny of a person does not meet the requirements of clause (i), and it is not among the specific offenses named in clause (ii). Thus, it is violent under this statutory scheme only if it fits within the so-called residual provision of clause (ii). To be a violent crime, it must be an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). In *Patillar*, we considered whether the Oklahoma larceny statute was a violent crime for sentencing purposes under United States Sentencing Guideline § 4B1.2(a)(2). 595 F.3d at 1139. We concluded § 1701, the statutory definition of larceny from a person, categorically described a crime of violence under the residual clause, which applied to Patillar's conviction under Okla. Stat. tit. 21 § 1704, grand larceny. We held "[l]arceny from the person . . . requires 'intent to deprive another' of his property. And when the taking is from a person, the conduct is violent and aggressive because it creates a significant risk of confrontation between thief and victim." *Id*. at 1140.

Wilfong's attempts to distinguish *Patillar* are unavailing. First, he argues *Patillar* was interpreting a different statue. The definition of larceny in § 1701, however, applies to both § 1708, as well as Wilfong's crime, § 1704, Patillar's crime. The larceny for

which Wilfong was convicted presents the same risk of confrontation with the victim as the larceny in *Patillar*.

Next, he argues *Patillar* interpreted a violent crime under the Guidelines, not the ACCA. However, the residual clause in § 4B1.2(a)(2) is identical to language in the ACCA, the crime is violent if it "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Patillar*, 595 F.3d at 1140. We apply the same analysis to both. *Id.*

Finally, Wilfong claims we must use a modified categorical approach[1] because larceny requires "fraud" or "stealth." Okla. Stat. tit. 21 § 1701. He points to *Mitchell v. State*, 408 P.2d 566 (Okla. Crim. 1965), where the court distinguished robbery, (which requires the application of force or fear), from larceny, (a taking by stealth or fraud). According to Wilfong, *Mitchell* interpreted larceny as "[t]aking property without the awareness of a victim," which is "inconsistent with risk of violence or confrontation." (Appellant's Op'g Br. 25.) Because his "victim was his own mother," she "would not have precipitated a violent confrontation." (*Id.* at 24-25.)

We disagree with Wilfong's interpretation of *Mitchell*. While the Oklahoma court discussed the difference between robbery and larceny, it said nothing about the potential

---

[1] When the criminal statute under which the defendant will be sentenced describes several different generic crimes, the "modified categorical approach" permits a court to consult the trial record to determine which statutory phrase was the basis of the defendant's conviction. *Johnson v. United States*, 555 U.S. 133, 130 S. Ct. 1265, 1273 (2010). The court may review "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Id.*

risk of violent confrontation when a victim discovers the perpetrator's stealth or fraud during the larceny.[2] In any event, we have held the statute is categorically a violent crime. "[O]ne panel cannot overrule the judgment of another panel of this court . . . absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *Barber v. T.D. Williamson, Inc.,* 254 F.3d 1223, 1229 (10th Cir. 2001) (quotation marks omitted). *Patillar* governs.

## III.

The district court did not err in denying Wilfong's motion to suppress and correctly determined his conviction for larceny qualified as a predicate conviction under the ACCA.

---

[2] In *Mitchell*, the defendant was convicted of robbery. He argued he did not commit robbery because the victim was knocked unconscious and therefore didn't know the property was being taken. The court rejected this argument:

> Where one commits the crime of robbery by means of force and fear, the fact that person robbed is knocked unconscious by an instrument in the hands of defendant and his billfold and a large sum of money is taken from his person while he is unconscious, does not reduce the crime to larceny from the person.

*Mitchell*, 408 P.2d at 571 (quoting *Jennings v. State*, 179 P.2d 693 (1947)).

AFFIRMED.

Matheson, J. joins in parts I., II. A. 1 and 2, II. B., and III.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge