[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-15111

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 23, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 01-00125-CR-J-25-TEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD THOMAS ADAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 23, 2005)

Before MARCUS, FAY and SILER*, Circuit Judges.

MARCUS, Circuit Judge:

_____

*Honorable Eugene E. Siler, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Richard Thomas Adams appeals his 60-month sentence imposed for conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846. On appeal, Adams argues that the district court erred by assessing him one criminal history point for a 1991 conviction because the offense occurred outside the ten-year window provided for in U.S.S.G. § 4A1.2(e)(2). We review the district court's interpretation of the Sentencing Guidelines de novo. See United States v. Rubio, 317 F.3d 1240, 1242 (11th Cir. 2003). After a thorough review of the record and careful consideration of the parties' briefs and oral arguments, we affirm.

On May 10, 2001, a federal grand jury in the United States District Court for the Middle District of Florida charged Adams with conspiring (between March and May 2, 2001) to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846, and with three counts of distributing cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2. Without a written plea agreement, Adams entered a guilty plea as to the conspiracy count and the government agreed to drop the remaining charges.

At the subsequent plea colloquy hearing, the government proffered the following factual basis for Adams's guilty plea. On March 2, 2001, a confidential informant ("CI") advised law enforcement that Adams was involved in the

operation of a cocaine trafficking organization. Over the course of the next two months, the CI and Adams had several telephone conversations in which Adams indicated his willingness to sell distribution quantities of cocaine. These conversations were monitored and tape-recorded by law enforcement. Also during this two-month period, Adams made hand-to-hand sales of cocaine to the CI in a restaurant parking lot in Jacksonville, Florida, on the following dates and in approximately the following amounts: (1) an April 4, 2001 sale in the amount of 252.2 grams; (2) an April 25, 2001 sale in the amount of 145 grams; and (3) a May 2, 2001 sale in the amount of 273 grams. Thus, Adams provided the CI with a total of 670.2 grams of cocaine.

Adams was arrested as he completed the May 2, 2001 sale. When he was arrested, Adams had $8,100 in marked U.S. currency that he had received from the CI moments earlier. Adams's codefendant and Adams had come to a mutual understanding to distribute cocaine to the CI, and this understanding was in effect from April 4, 2001, to May 2, 2001. Upon questioning at the plea hearing, Adams stated that he had no disagreement with the government's proffer and acknowledged that he had come to a mutual understanding with others to provide cocaine unlawfully to the CI on at least three occasions.

At sentencing, the PSI assigned Adams a base offense level of 26, pursuant to U.S.S.G. § 2D1.1(c)(7), and recommended a 2-level reduction for Adams's minor role in the offense, pursuant to U.S.S.G. § 3B1.2(b), and a 3-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b). Thus, Adams's adjusted offense level was 21. As for his criminal history, the PSI recommended assessing one criminal history point based on an August 22, 1991 conviction for which Adams had received 12 months' probation for violating Georgia's controlled substance act, driving under the influence, speeding, and carrying a concealed weapon. Adams also received one criminal history point for a 1997 conviction for aggravated fleeing and attempting to elude police, possession of marijuana, driving under the influence, reckless driving, and driving the wrong way on a one-way road. These two criminal history points established a criminal history category of II.[1]

The PSI further noted that there was a 5-year statutory minimum and a 40-year statutory maximum for Adams's offense. The Guidelines sentencing range was 41-51 months' imprisonment, but because of the mandatory minimum, 21

---

[1] We note that the assessment of an additional criminal history point, based on the 1991 conviction, rendered Adams ineligible for a safety-valve reduction to his offense level, see U.S.S.G. § 2D1.1(b)(6); U.S.S.G. § 5C1.2(a)(1) (enumerating as one of the five requirements for safety-valve eligibility, that "the defendant does not have more than 1 criminal history point"), and, thus, ineligible to receive a sentence below the 60-month mandatory minimum he faced under 21 U.S.C. § 841(b)(1)(B).

U.S.C. § 841(b)(1)(B), the recommended Guidelines sentence was 60 months' imprisonment. At the sentencing hearing, the government argued against giving Adams a minor-role adjustment because it was he who met with the purchaser, discussed the negotiated price, had multiple telephone conversations with the purchaser, and did the hand-to-hand delivery of drugs. The district court agreed, finding that Adams's behavior in the case was more than that of a simple drug courier. Accordingly, the court denied the minor-role adjustment. Taking into consideration the 60-month statutory minimum, Adams's adjusted offense level of 23 and criminal history category II resulted in a sentencing range of 60 to 63 months' imprisonment.

Adams argued against imposition of a criminal history point for his August 1991 conviction because the offense occurred much earlier (on January 28, 1991) than the actual imposition of his prior sentence. Adams contended that the only reason he was not sentenced until August 1991 was because of a busy state-court docket. According to Adams, there was no other explanation for the seven-month delay because he pled guilty and, thus, there was no defense to prepare. The district court overruled Adams's objection, finding that because the 1991 imposition of sentence occurred within ten years of the beginning of the instant offense, it could be considered under the Guidelines. The district court then

sentenced Adams to a 60-month term of imprisonment, followed by a 5-year term of supervised release.[2]

Section § 4A1.2(e) of the Sentencing Guidelines provides, in relevant part, that in calculating a criminal history score for offenses in which a term of imprisonment of less than one year and one month was imposed, a sentencing court should score a "prior sentence that was imposed within ten years of the defendant's commencement of the instant offense . . . ." U.S.S.G. § 4A1.2(e)(2) (2001). A "prior sentence" for purposes of this Guideline "means any sentence previously imposed upon adjudication of guilt." U.S.S.G. § 4A1.2(a)(1). According to Adams, the instant offense occurred on April 4, 2001, the date of the earliest substantive offense. We have given him the benefit of that date for purposes of our analysis.[3]

---

[2]The district court later granted Adams's motion to vacate his sentence, filed pursuant to 28 U.S.C. § 2255, based on Adams's claim that counsel was ineffective for failing to file a direct appeal. Thereafter, the district court re-entered the original judgment in September 2003. Adams then appealed his sentence to this Court. Ronald W. Maxwell, appointed counsel for Adams, moved to withdraw on appeal pursuant to Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), because, in his opinion, there were no issues of arguable merit on which to base a direct criminal appeal. We denied that motion and directed counsel to brief the issue of whether Adams's 1991 conviction should have been included in his criminal history computation at sentencing.

[3]Cf. United States v. Cornog, 945 F.2d 1504, 1509 (11th Cir. 1991) (where the commencement of the conspiracy offense opened the 15-year window of § 4A1.2(e)(1) later than did the substantive offenses, this Court used the earliest substantive offense date to outline the dates of the offense conduct, specifically limiting that method and stating "for purposes of this opinion, we will count back only from the last day alleged as part of the conspiracy" (emphasis added)).

6

Adams asserts that the Guidelines do not define the term "imposed" as used in the context of § 4A1.2(e)(2), and that an interpretation of the term that encompasses solely the date the sentence was imposed for a prior offense impermissibly overlooks the procedural history of the prior conviction. Adams urges the 1991 offense should not be considered in calculating his criminal history score because the offense occurred on January 28, 1991, but he was not sentenced, through no fault of his own, until August 22, 1991, the first scheduled court date after his initial appearance. We are unpersuaded.

Because Adams's prior sentence was imposed on August 22, 1991, and he commenced the instant offense no later than March 2, 2001 (well within 10 years of the prior conviction), the district court correctly assessed a criminal-history point for the prior conviction. We decline Adams's invitation to recognize an exception to the 10-year rule where, due to an alleged backlog in the state-court system in which he was convicted, imposition of the sentence for his prior conviction was delayed. Such an exception would be contrary to the plain language of the § 4A1.1(c) and its accompanying commentary, including the definitions of its terms.

The calculation of a defendant's criminal history category expressly focuses on "prior sentence[s]," not on prior offenses or prior convictions. It is well-

7

established that "language in the Sentencing Guidelines is to be given its plain and ordinary meaning." United States v. Pompey, 17 F.3d 351, 354 (11th Cir. 1994) (citing United States v. Strachan, 968 F.2d 1161, 1163 (11th Cir. 1992) (referring to the "wealth of precedent in this circuit that seeks to remain faithful to the plain language of the sentencing guidelines"); United States v. Wilson, 993 F.2d 214, 217 (11th Cir. 1993) (stating that Sentencing Guidelines commentary to be given its plain and ordinary meaning)). Simply put, the language of § 4A1.1(c) is unambiguous and, accordingly, we must give the language its plain and ordinary meaning.

Moreover, our decision in this case is consistent with our sister Circuits' uniform treatment of such claims. See, e.g., United States v. Arnold, 213 F.3d 894, 896 (5th Cir. 2000) (observing that "sentence pronouncement is the sole, relevant event for purposes of § 4A1.2(e)(2)"); United State v. Robbio, 186 F.3d 37, 45 (1st Cir. 1999) (rejecting defendant's argument that prior offenses taking place outside of the 10-year period should not count under § 4A1.2(e)(2) and observing, "[f]or purposes of determining a criminal history category under § 4A1.2(e)(2), the ten-year period is determined by the date of sentencing, not of conviction"); United States v. Napoli, 179 F.3d 1, 17-18 (2d Cir. 1999) (affirming imposition of criminal history points even where prior sentences were imposed

8

within 10-year period only after sentencings were delayed while defendant was cooperating with the government).

In sum, the district court did not err by assessing Adams one criminal history point for the 1991 sentence and we, accordingly, affirm.

**AFFIRMED.**