[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15770
Non-Argument Calendar

_____

D.C. Docket No. 8:11-cr-00117-SDM-EAJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ASIEBA IMADJAM THOMAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 30, 2012)

Before BARKETT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Asieba Thomas appeals his convictions and his total 212-month sentence

after pleading guilty to 2 counts of possessing with intent to distribute, and distributing, 5 or more grams of crack cocaine within 1000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1), 860(a), and 1 count of possessing with intent to distribute, and distributing, 5 or more grams of crack cocaine, in violation of § 841(a)(1).  Thomas raises three main arguments on appeal: (1) the district court abused its discretion in denying his motion to withdraw the guilty plea, (2) he received ineffective assistance of counsel, and (3) his sentence was procedurally and substantively unreasonable.  For the reasons set forth below, we affirm.

## I.  FACTS

On March 12, 2010, Thomas sold 5.8 grams of crack cocaine to undercover officers for $500, at a location within 1000 feet of a public high school.  On May 25, 2010, he sold 5.5 grams of crack cocaine to the officers for $225, at the same location.  Less than a month later, Thomas sold an additional 13 grams of crack cocaine in exchange for $505, at a different location.  The above three transactions formed the bases for Counts 1, 2, and 3 of Thomas's indictment.

On Monday, June 20, 2011, beginning at 10:18 a.m., a magistrate judge held a plea hearing for Thomas and two other defendants in unrelated cases.  Thomas and one of the other defendants were represented by attorney Alec Fitzgerald Hall.  At the start of the hearing, Thomas told the magistrate that he had asked Hall to

2

recuse himself from Thomas's case. The magistrate responded that attorneys cannot recuse themselves, and asked Thomas whether he was ready to plead guilty. Thomas replied: "I'm just not ready right now." The magistrate informed Thomas that his trial would occur the following Monday unless a continuance was granted. She then asked Hall whether he had a cordial relationship with Thomas, and Hall replied: "I have. Sometimes people just don't like the message." The magistrate asked Hall to confer with Thomas and to come back at 11:15 a.m. However, after being informed that Hall represented another defendant at the instant plea hearing, the magistrate instructed Thomas to just sit and observe the hearing to "see what it's like." She then commenced the plea colloquy for the other two defendants, which ended at 10:55 a.m.

At 11:18 a.m., the magistrate reconvened the hearing for Thomas. Hall stated that he afforded Thomas the opportunity to ask any questions, that Hall answered those questions, and that Thomas still wanted to plead guilty. Upon inquiry from the magistrate, Thomas himself indicated that he wanted to plead guilty, that he had enough time to talk with his attorney, and that watching the other two guilty pleas helped him. The magistrate asked Thomas, among other things, whether anyone had made any promises or threats to get him to plead guilty, and Thomas replied that no one had.

3

Thomas further indicated that he had a complete opportunity to review the indictment, discuss the case with his attorney, and decide with his attorney on the best course of action. However, when the magistrate asked Thomas if he was satisfied with his attorney's representation, Thomas replied in the negative, stating that Hall failed to fully investigate his case. The magistrate asked Hall to address the issue, and Hall responded that he had reviewed with Thomas a video that the government provided to them, and that Hall was personally familiar with the locations where Thomas's first two offenses took place. Hall also stated:

> I discussed these issues with Mr. Thomas, reviewed the video with him on numerous occasions. I'm familiar with the law, reviewed everything with him, so I'm not aware of what Mr. Thomas is talking about about a full investigation. The video speaks for itself.

The magistrate asked Hall whether he had any doubt that the offenses charged in the first 2 counts of the indictment actually occurred within 1000 feet of a school. Hall replied that he was familiar with the area and believed that the offenses occurred within 1000 feet of the high school, as charged in the indictment. He stated that he had reviewed the Guidelines with Thomas, that Thomas wanted to plead guilty, and that Hall was not aware of any investigation that had not been completed.

The magistrate asked Hall to speak with Thomas, and Hall conferred with

4

him for several minutes. Afterwards, the magistrate asked Thomas whether he had a chance to talk to Hall, whether the conversation cleared up any questions, whether Thomas had adequate time to meet with Hall, and whether Thomas was fully satisfied with Hall's advice and representation. To all four questions, Thomas answered, "Yes, ma'am." Thomas then indicated that he was ready to proceed with the plea. The magistrate again asked Thomas whether anyone had made any promises or threats in order to get him to plead guilty, and Thomas replied in the negative.

The magistrate described the statutory penalties, which included a maximum term of 80 years' imprisonment on Counts 1 and 2, and 40 years on Count 3, and explained that the terms could be imposed consecutively. She also told Thomas that he faced a mandatory minimum term of five years' imprisonment on each count. Thomas indicated that he understood the applicable penalties.[1]

Upon inquiry, Thomas also indicated that he had discussed the Guidelines with Hall. The magistrate explained that no one knew for sure what the guideline range would be, and, if any prediction in this regard turned out to be wrong, Thomas would not be able to withdraw his guilty plea. Thomas stated that he

---

[1] As explained later in this opinion, the statutory penalties for Thomas's offenses were, in fact, significantly lower.

5

understood.  After further questioning, Thomas indicated that he was ready to plead guilty and had no questions about the rights he was giving up and the consequences of his pleas.  He then pleaded guilty to each count.  The magistrate found that, despite "some back and forth," Thomas was competent and made his plea knowingly, intelligently, and voluntarily.

After the hearing, the district court accepted the plea and adjudicated Thomas guilty.  Prior to sentencing, Hall withdrew from representation due to a conflict of interest and was replaced by another attorney.

A probation officer compiled a presentence investigation report ("PSI"), and, in calculating Thomas's guideline range, initially assigned him a base offense level of 25, pursuant to U.S.S.G. §§ 2D1.2(a)(2) and 2D1.1(c)(8).  However, the officer determined that Thomas had at least two prior felony convictions for a controlled substance offense, which qualified him as a career offender under U.S.S.G. § 4B1.1.  Specifically, Thomas was convicted in December 2003 for possession of cocaine with intent to sell or deliver (a crime he committed on October 30, 2003, 15 days after his 18th birthday), and was sentenced to 4 months of community control and 3 years of probation.  His probation was revoked in February 2004, and he was sentenced to 43.2 months in prison.  He was released on April 9, 2007.  On April 25, 2005, nearly 2 years before his release, Thomas

6

was convicted for delivery of cannabis, a crime that he had committed in May 2003, when he was 17 years old. He was sentenced to 299 days of time served for this offense. Thomas's career-offender classification resulted in an offense level of 34 and automatically placed him into criminal history category VI, yielding a guideline range of 262 to 327 months' imprisonment.

On the day that the final PSI was issued, Thomas filed a motion to withdraw his guilty plea. He contended, in relevant part, that his plea was not knowing or voluntary because Hall and the court misled and pressured him, causing him to be confused. He argued that Hall testified against him and disclosed privileged conversations in order to induce him to plead guilty.

Thomas additionally filed a sentencing memorandum, challenging his career-offender classification on several grounds, which are discussed below. He also asked the district court to vary downward from the guideline range, pursuant to 18 U.S.C. § 3553(a), and impose a sentence no greater than 46 months. In support, he presented a number of mitigating factors, including the following: his offenses were not overly serious and involved small amounts of cash and drugs; he had 4 children and was willing and able to perform honest work; he had accepted responsibility for the instant offenses; his criminal history did not indicate that he would be a threat to the public; he could benefit from vocational training and drug

7

treatment while in prison; he had a troubled childhood, and one of his siblings committed suicide due to mental health problems, while another one was incarcerated; and a sentence of 46 months would not lead to an unwarranted sentencing disparity.

At the sentencing hearing, Thomas reiterated his arguments for withdrawing the guilty plea, and, for the first time, asked the court to consider the fact that he did not know, prior to pleading guilty, that he would be subject to the career-offender enhancement. The district court denied Thomas's motion to withdraw, reasoning that he was informed of the applicable statutory penalties and was not required to know the specific guideline calculations.

Thomas also reiterated his challenges to the career-offender classification. He argued, among other things, that his career-offender status rested on a mere technicality because he was convicted for the cannabis offense nearly two years after committing it, and was sentenced just barely within five years of the instant offense. He also argued that the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372, lowered his applicable maximum penalties and abolished the mandatory minimum because his offense involved less than 28 grams of crack cocaine. Finally, he presented a variety of mitigating circumstances in support of a downward variance, most of which were described in his aforementioned

8

sentencing memorandum.

The court overruled Thomas's objection to the career-offender classification and adopted the PSI's guideline calculations. With regard to the FSA, the court stated that its comments on the issue would be "of utterly no significance to anyone." It then expressed doubt that the FSA would apply to defendants who committed an offense before, but were sentenced after, the FSA's enactment. As to Thomas's request for a downward variance, the court actively listened to his arguments in mitigation, expressly noting his family problems, his drug addiction, and his young children. The court then sentenced Thomas to 212 months in prison on each count, to be served concurrently, along with a total 8 years of supervised release.

In explaining the sentence, the district court stated that it had considered the advisory guideline range, the applicable statutory penalties, and the § 3553(a) factors. It had also considered Thomas's youth at the time of his cannabis offense, as well as his current youth. The court stated that Thomas's 212-month sentence offered him "reasonable prospects for resuming his life and perhaps even a role in the rearing of his children, assuming that that is a helpful and wholesome thing for them." The court explained that it resolved in Thomas's favor the "not inconsiderable doubts" about his potential to become a fit father, that it recognized

9

his youth and "the closeness of a couple of these chronological calculations" regarding his career-offender classification, and that, for these reasons, it decided to sentence Thomas below the guideline range, the middle of which would have been approximately 290 months.

The district court further explained that Thomas's criminal history was "long and aggravated" and that he was "impervious to deterrence," given that he had previously served three-and-a-half years in prison.  The court also noted: "I've moderated the sentence to the extent that it seems conscionable to do so in light of other sentences I've given to similar offenders."

## II.  ANALYSIS

### A.  Motion to Withdraw the Guilty Plea

We review for abuse of discretion the district court's denial of a motion to withdraw a guilty plea.  *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006).  A defendant may withdraw a guilty plea prior to sentencing if he "can show a fair and just reason for requesting the withdrawal."  Fed.R.Crim.P. 11(d)(2)(B); *Brehm*, 442 F.3d at 1298.  This portion of Rule 11, concerning presentence motions to withdraw, must be liberally construed, but the defendant has "no absolute right to withdraw a guilty plea prior to imposition of a sentence," and we will not reverse a denial of a motion to withdraw unless the district court's

10

decision was "arbitrary or unreasonable." *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988) (discussing former Fed.R.Crim.P. 32(d), the predecessor to Rule 11(d)).  To determine whether a defendant has shown a fair and just reason for withdrawing the plea, a court "may consider the totality of the circumstances surrounding the plea." *Id.* at 471-72.  Specific factors to be analyzed include "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Id.* at 472 (citation omitted).  Thomas relies only on the first two factors in his brief to this Court.

## 1.  Close Assistance of Counsel

Thomas argues that he did not receive close assistance of counsel because, among other things, Hall failed to advise him that he would be sentenced as a career offender, despite knowing of his prior convictions.  Notably, Thomas did not raise this issue in his written motion to withdraw, but only at the sentencing hearing, and he did not present any evidence, such as an affidavit, showing that Hall actually failed to inform Thomas of his career-offender status.  Moreover, at the plea hearing, the magistrate told Thomas that no one could predict with certainty what his guideline range would be, and Thomas stated that he

11

understood.  The magistrate also asked Thomas whether he had discussed the Guidelines with his attorney, and Thomas replied that he had.  Finally, the magistrate informed Thomas of the applicable statutory minimum and maximum sentences, and Thomas again indicated his understanding.  In this light, the district court did not act arbitrarily or unreasonably in finding that Thomas's alleged ignorance of his potential career-offender status did not warrant a withdrawal of his plea.  *See United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (holding that the defendant's plea was not involuntary due to his misunderstanding of how severe his sentence might be, given that the district court informed him of the minimum and maximum penalties and told him not to rely on his counsel's sentencing predictions).[2]

Thomas further argues that he did not receive close assistance of counsel because Hall implied that Thomas was stubborn by saying that "sometimes people just don't like the message"; conceded that he had not investigated the proximity of Thomas's crimes to the local school; disclosed privileged communications; and expressed his personal opinion of Thomas's guilt by stating that "the video speaks for itself."  After carefully reviewing the plea hearing transcript, we find no merit

---

[2] We express no opinion as to whether counsel's failure to inform the defendant of a potential career-offender status constitutes deficient performance under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

to Thomas's assertions.  Hall made the allegedly improper comments simply to assure the court that he had provided adequate assistance to Thomas, after Thomas expressed his dissatisfaction with Hall.  For instance, Hall made the "the video speaks for itself" comment not for the purpose of incriminating Thomas, but as part of Hall's explanation regarding the amount of investigation he conducted in Thomas's case, after the magistrate asked Hall to address the issue.  Likewise, the alleged disclosure of privileged communications occurred when Hall simply tried to explain to the magistrate why further investigation was unnecessary.  Hall's statements were relevant to the issue at hand, and he did not act improperly in the circumstances.

Finally, Thomas argues that Hall failed to investigate adequately the proximity of the offenses to the school.  However, nothing suggests that Hall acted improperly by relying on his personal familiarity with the relevant location to determine that Thomas's offenses occurred within 1000 feet of a high school, rather than measuring the distance through more objective means.  *Cf. Pease*, 240 F.3d at 941-42 (holding that counsel was not deficient under *Strickland* for relying on the defendant's statements regarding his criminal history rather than independently running a criminal records check).  In light of the above, the district court did not act arbitrarily or unreasonably in finding that Thomas received close

13

assistance of counsel with regard to his guilty plea. *See Buckles*, 843 F.2d at 471-72.

## 2. Knowing and Voluntary

Regarding the second *Buckles* factor—whether a plea is knowing and voluntary—Thomas again points to Hall's deficiencies, which, as discussed above, did not obligate the district court to allow a plea withdrawal. Thomas also relies on the fact that he repeatedly indicated his unwillingness to plead guilty and his dissatisfaction with Hall, thereby expressing doubt and confusion about the nature of the plea and the charges against him. He argues that this doubt and confusion were never rectified because he did not have adequate time to speak with Hall.

Although the transcript reflects some hesitation on Thomas's part, it also shows that, contrary to his assertions, the magistrate adequately resolved all of his concerns. When Thomas first indicated that he was dissatisfied with his attorney and was not ready to proceed, the magistrate gave Thomas an opportunity to watch the plea hearing of the other defendants, at the end of which he had some time to talk with Hall. Afterwards, Thomas indicated that watching the other plea colloquies helped him and that he had enough time to talk with his attorney. Hall confirmed that he talked to Thomas and answered all of his questions.

When Thomas again expressed dissatisfaction with Hall due to his lack of

14

investigation, the magistrate questioned Thomas and Hall about the matter, listened to Hall's explanation that further investigation was unnecessary, and gave Thomas another chance to talk with Hall, after which Thomas indicated that his questions were answered.  Thomas also indicated that he had adequate time to meet with Hall, was fully satisfied with Hall's representation, and was ready to proceed with the plea.  Notably, the magistrate twice asked Thomas whether anyone had made any threats or promises to get him to plead guilty, and Thomas both times replied in the negative.

In sum, given the magistrate's inquiries and Thomas's affirmations, the district court did not act unreasonably or arbitrarily in finding that Thomas received close assistance of counsel and that his guilty plea was made knowingly and voluntarily.  *See United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("[T]here is a strong presumption that the statements made during the [plea] colloquy are true.").  Accordingly, the court did not abuse its discretion in denying Thomas's motion to withdraw his guilty plea.  *See Buckles*, 843 F.2d at 471-72.

## B.  Ineffective Assistance of Counsel

Thomas argues that his trial counsel, Hall, rendered ineffective assistance under *Strickland*, and he points to the same alleged deficiencies as discussed with

15

respect to his motion to withdraw the guilty plea.

"A claim of ineffective assistance of counsel is a mixed question of law and fact that we review *de novo*." *Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008). However, we will not consider an ineffective-assistance-of-counsel claim on direct appeal unless "the record is sufficiently developed." *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) (quotation omitted). The preferred means for deciding a claim of ineffective assistance is through a 28 U.S.C. § 2255 motion, "even if the record contains some indication of deficiencies in counsel's performance." *Id.* (quotation omitted).

Both Thomas and the government argue that the record is sufficiently developed to decide Thomas's ineffective-assistance claim. We disagree. The district court did not consider the claim, and the record contains no concrete evidence showing what Hall knew of Thomas's prior criminal history, whether Hall informed Thomas of his potential career-offender status, or what Hall said to Thomas during the plea hearing. Accordingly, we decline to consider Thomas's ineffective assistance claim in this appeal. *See Patterson*, 595 F.3d at 1328-29.

### C.  Reasonableness of the Sentence

We review the reasonableness of a sentence under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41, 128 S.Ct. 586, 591,

16

169 L.Ed.2d 445 (2007).  First, we determine whether the district court committed any "significant procedural error" and, second, whether the sentence is "substantively reasonable under the totality of the circumstances." *United States v. Turner*, 626 F.3d 566, 573 (11th Cir. 2010).  "A sentence may be procedurally unreasonable if the district court improperly calculates the Guidelines range, treats the Guidelines as mandatory rather than advisory, fails to consider the appropriate statutory factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir. 2008).

We review *de novo* a district court's interpretation of the Guidelines and its application of the Guidelines to the facts of the case. *United States v. Register*, 678 F.3d 1262, 1266 (11th Cir. 2012).  Where a party fails to object in the district court, we review the issue for plain error, which requires a defendant to establish "(1) that there was error (2) that was plain; (3) that affected his substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *United States v. Straub*, 508 F.3d 1003, 1008, 1011 (11th Cir. 2007) (quotation omitted).

### 1.  Career-Offender Status

Under § 4B1.1, a "career offender" is one who, among other things, "has at

least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). To qualify as "two prior felony convictions," the sentences for those convictions must be "counted separately under the provisions of § 4A1.1(a), (b), or (c)." *Id.* § 4B1.2(c). In relevant part, § 4A1.1(b) provides that 2 criminal history points should be assigned for each prior sentence of at least 60 days that does not exceed 1 year and 1 month. *Id.* § 4A1.1(a)-(b). Under § 4A1.1(c), one criminal history point is added for any sentence not assigned 3 or 2 points under subsections (a) and (b), respectively. *Id.* § 4A1.1(c). Where, as here, the defendant committed a prior offense before turning 18 years of age and was sentenced to at least 60 days of confinement (but not more than 1 year and 1 month), then 2 points are added for such a sentence if the defendant was released "within five years of his commencement of the instant offense." *Id.* § 4A1.2(d)(2)(A) & comment. (n.7). If a prior sentence for a juvenile offender does not qualify for two points under the above provision, then that sentence accrues one criminal history point if it was "imposed" within five years of the instant offense. *Id.* § 4A1.2(d)(2)(B) & comment. (n.7).

Thomas first argues that the district court should not have treated his cannabis offense as a predicate felony for the purpose of the career-offender enhancement, and should not have assessed 2 criminal history points for that

18

offense, because he was 17 years old at the time of the offense's commission, was convicted and sentenced to time-served nearly 2 years later, and the sentence occurred either outside, or just barely within, 5 years of the instant offense. Essentially, Thomas argues that his career-offender status rested on a mere technicality that should have been excused.

We find Thomas's argument unpersuasive. Thomas was adjudicated guilty of the cannabis offense and sentenced to 299 days, time-served, on April 25, 2005. Because the sentence of time-served was imposed on April 25, 2005, he was also "released" from the sentence on that date. *See* U.S.S.G. § 4A1.2(d)(2)(A) & comment. (n.7). The first of Thomas's instant offenses occurred on March 12, 2010, within 5 years of his release from the 299-day sentence. Although the five-year requirement was just barely met by a month and a half, we decline to make an exception to the technical requirements of the Guidelines, as he suggests. *See United States v. Adams*, 403 F.3d 1257, 1260 (11th Cir. 2005) (declining to recognize an exception to a 10-year rule, similar to the one in this case, where the defendant committed a prior offense outside the 10-year period, but, due to a backlog in the state-court system, his sentencing was delayed and fell within the 10-year period). Because the five-year requirement was satisfied, Thomas's 2005 cannabis conviction accrued two criminal history points and was properly

19

classified as a separate predicate felony for the purpose of the career-offender

enhancement. *See* U.S.S.G. §§ 4A1.1(b), 4A1.2(d), 4B1.2(c).[3]

Thomas next argues that his two predicate felonies should not have been

considered as separate offenses because he was sentenced to time-served for the

cannabis conviction while serving a sentence for the cocaine conviction. He did

not make this argument in the district court, and, therefore, we review the issue for

plain error. *See Straub*, 508 F.3d at 1008.

The relevant guideline provision states:

If the defendant has multiple prior sentences, determine whether those
sentences are counted separately or as a single sentence. Prior
sentences always are counted separately if the sentences were
imposed for offenses that were separated by an intervening arrest (*i.e.*,
the defendant is arrested for the first offense prior to committing the
second offense). If there is no intervening arrest, prior sentences are
counted separately unless (A) the sentences resulted from offenses
contained in the same charging instrument; or (B) the sentences were
imposed on the same day. Count any prior sentence covered by (A)
or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2); *see also id.* § 4B1.2, comment. (n.3) ("The provisions of

---

[3] Even if Thomas was not "released" from the 299-day sentence on April 25, 2005, it is undisputed that the sentence was imposed on that date, thereby falling within the 5-year period, as discussed above. In that event, the cannabis offense would accrue only one criminal history point, but would still qualify Thomas as a career offender. *See* U.S.S.G. § 4B1.2(c). Because a career-offender status automatically results in a criminal history category of VI, Thomas's guideline range would not change regardless of whether one or two criminal history points were assigned for his cannabis offense. *See id.* § 4B1.1(b). Thus, even if the district court erred in assigning two points for that offense, rather than one, this error was harmless. *See id.*

§ 4A1.2 . . . are applicable to the counting of convictions under § 4B1.1.").

We will assume, *arguendo*, that there was no intervening arrest between Thomas's two predicate felonies.  However, Thomas does not argue that his cocaine offense and his cannabis offense were contained in the same charging instrument, and the record makes clear that the sentences for those offenses were not imposed on the same day.  Thus, the district court did not err, plainly or otherwise, in treating the two offenses as separate.  *See* U.S.S.G. § 4A1.2(a)(2).

Finally, Thomas argues that his predicate convictions were presumptively void because the statute of conviction, Fla. Stat. § 893.13, was facially unconstitutional, as found by a district court in *Shelton v. Sec'y, Dep't of Corr.*, 802 F.Supp.2d 1289 (M.D. Fla. 2011).  However, we have held that "a district court cannot ignore or discount for any purpose a prior conviction that has not been invalidated in a prior proceeding, unless there was an unwaived absence of counsel in the proceedings resulting in that conviction." *United States v. Phillips*, 120 F.3d 227, 231 (11th Cir. 1997).  Thomas never alleged that his prior convictions were uncounseled.  Thus, despite *Shelton*, the district court had no authority to discount those convictions.  *See id.*

## 2.  Retroactive Application of the FSA

Thomas argues that the district court erred in refusing to apply the FSA,

21

which abolished his mandatory minimum and significantly reduced his maximum applicable penalties on all counts.  He also argues that the district court abused its discretion by failing to specify which statutory maximum and minimum terms applied, as those terms were highly relevant to the sentencing decision.

After the parties had filed their briefs in this case, the Supreme Court held that the FSA applied to defendants, like Thomas, who were sentenced after the Act took effect on August 3, 2010, even if the offense of conviction occurred prior to that date.  *See Dorsey v. United States*, 567 U.S. __, __, 132 S.Ct. 2321, 2335-36, 183 L.Ed.2d 250 (2012).  Under the FSA, Thomas was subject to a maximum term of 40 years in prison and a mandatory minimum term of 1 year for Counts 1 and 2, and a maximum of 20 years with no mandatory minimum for Count 3.  *See* 21 U.S.C. §§ 841(b)(1)(C), 860(a).  Thus, the district court erred by declining to apply the new statutory penalties to Thomas.  *See Dorsey*, 567 U.S. at __, 132 S.Ct. at 2335.

However, the record indicates that the district court would have imposed the same 212-month total sentence regardless of whether the FSA applied.  The court stated that its comments on the applicability of the FSA were of "utterly no significance to anyone," and, although it suggested that the FSA might not apply, it declined to make an explicit finding in this regard.  Moreover, the court's total

22

sentence of 212 months (17.67 years) fell far above any possible statutory minimum, whether 1 or 5 years, and far below any possible statutory maximum, whether 40 or 80 years. Thus, the court's failure to apply the FSA was harmless and does not require reversal. *See United States v. Kapordelis*, 569 F.3d 1291, 1314 (11th Cir. 2009) (holding that an error in the guideline calculations was harmless where the record indicated that the district court would have imposed the same sentence absent the error). For the same reason, the district court did not commit reversible error by declining to decide whether the FSA applied. *See id.*; *United States v. Keene*, 470 F.3d 1347, 1348-49 (11th Cir. 2006) (declining to decide whether the district court correctly applied a guideline enhancement, as the court stated that it would have imposed the same sentence with or without the enhancement); *see also* 28 U.S.C. § 2111 ("On the hearing of any appeal . . . in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.").

### 3. Substantive Reasonableness

Thomas argues that the district court imposed a substantively unreasonable sentence in light of the 18 U.S.C. § 3553(a) factors. In support, he presents essentially the same mitigating circumstances as in his sentencing memorandum,

described above, and argues that the district court gave inadequate consideration to many of these circumstances.

In reviewing a sentence for substantive unreasonableness, we examine the totality of the circumstances, including whether the § 3553(a) factors support the sentence in question. *Gonzalez*, 550 F.3d at 1324.[4] We do not apply a "presumption of reasonableness" to sentences within the guideline range. *United States v. Phaknikone*, 605 F.3d 1099, 1107 (11th Cir. 2010). However, we will "ordinarily expect" a within-guideline sentence to be reasonable, and will only remand for resentencing if the district court committed a "clear error of judgment" in weighing the § 3553(a) factors. *Gonzalez*, 550 F.3d at 1324 (quotation omitted).

In this case, the district court's total sentence of 212 months' imprisonment fell below the guideline range of 262 to 327 months. Because we would ordinarily expect a higher, within-guideline sentence to be reasonable, Thomas's more favorable, below-guideline sentence would also enjoy such expectation of

---

[4] Under § 3553(a), the sentencing court must impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in § 3553(a)(2), which include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2). Other factors to be considered in imposing a sentence include the nature and circumstances of the offense, the history and characteristics of the defendant, the available sentences, the applicable guideline range, and the need to avoid unwarranted sentence disparities. *Id.* § 3553(a)(1), (3)-(6).

24

reasonableness, at least with respect to his argument that the sentence was too

harsh.  *See id.*  In addition, the sentence of 212 months (17.67 years) fell far below

the 40-year statutory maximum for Thomas's offenses charged in Counts 1 and 2

of the indictment.  *See* 21 U.S.C. §§ 841(b)(1)(C), 860(a); *Gonzalez*, 550 F.3d

at 1324 (concluding that a sentence was reasonable in part because it was well

below the statutory maximum).

Although Thomas presented a number of mitigating factors to justify an

even greater downward variance, the district court expressly considered most of

these factors.  At the sentencing hearing, the court actively listened to all of

Thomas's arguments in mitigation, making comments regarding his family

problems, his drug addiction, and his young children.  After imposing sentence,

the court explained that it varied downward from the guideline range due to

Thomas's youth at the time he committed the predicate offenses, the "closeness"

of the career-offender calculations, and his potential for being a good parent.  The

court indicated that it might have given him a 290-month sentence otherwise.

Although the court may not have expressly discussed all the § 3553(a) factors, it

was not required to do so.  *See United States v. Sanchez*, 586 F.3d 918, 936 (11th

Cir. 2009) (stating that a district court need not discuss each § 3553(a) factor in

explaining its sentence, as long as it "considers the defendant's arguments at

25

sentencing and states that it has taken the § 3553(a) factors into account").

Despite the mitigating circumstances, several factors militated in favor of a higher sentence. As the district court noted, Thomas had a "long and aggravated" criminal history and was "impervious to deterrence," given that he had previously served approximately three-and-a-half years in prison. These factors warranted a sentence that would promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from Thomas's future crimes. *See* 18 U.S.C. § 3553(a)(2). The district court also noted the need to avoid sentencing disparities, stating that it has "moderated the sentence to the extent that it seems conscionable to do so in light of other sentences [it has] given to similar offenders." *See id.* § 3553(a)(6). In this light, the district court could reasonably conclude that anything less than 212 months' imprisonment would not have been a sufficient punishment. *See United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) ("The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court . . . ." (quotation omitted)). Accordingly, Thomas's sentence was procedurally and substantively reasonable.

For the foregoing reasons, we affirm Thomas's convictions and sentences.

**AFFIRMED.**