PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2351
_____

UNITED STATES OF AMERICA

v.

RICARDO MARRERO,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 09-cr-00208)
District Judge:  Honorable Gustave Diamond
_____

Argued January 26, 2012
Submitted Pursuant to Third Circuit LAR 34.1(a)
July 26, 2013
On Remand from the United States Supreme Court

Before:  AMBRO, CHAGARES and
HARDIMAN, *Circuit Judges*.

(Filed:  February 19, 2014)

Rebecca R. Haywood
Michael L. Ivory
Office of the United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219-0000
        *Attorneys for Plaintiff-Appellee*

Lisa B. Freeland
Karen S. Gerlach
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222-0000
        *Attorneys for Defendant-Appellant*

---

## OPINION OF THE COURT

---

HARDIMAN, *Circuit Judge*.

Ricardo Marrero appeals his judgment of sentence after pleading guilty to two counts of bank robbery. Marrero claims the District Court erred in classifying him as a "career offender" under § 4B1.1 of the United States Sentencing Guidelines. Because we agree with the District Court that Marrero's convictions for simple assault and third-degree murder qualify as "crimes of violence," we will affirm.

I

In December 2010, Marrero pleaded guilty to two counts of bank robbery in violation of 18 U.S.C. § 2113(a). Thereafter, the Probation Office prepared a Presentence Investigation Report (PSR), which recommended that Marrero be sentenced as a career offender under § 4B1.1 of the United States Sentencing Guidelines (USSG or Guidelines) because he had three convictions for crimes of violence: (1) third-degree murder under 18 Pa. Cons. Stat. Ann. § 2502(c) in 1997; (2) simple assault under 18 Pa. Cons. Stat. Ann. § 2701(a)(1) in 2004; and (3) the bank robberies in this case.

The PSR described Marrero's third-degree murder conviction as follows. In 1997, a man named Guy Prange approached Marrero and others outside a house in Coatesville, Pennsylvania, and asked for drugs. He was told they did not have any drugs. When Prange began walking away, Marrero ran up and hit him from behind, knocking him to the ground. Marrero then kicked Prange numerous times. Prange died in the hospital twenty-five days later from complications from a ruptured spleen. In September 2002, Marrero pleaded guilty to murder in the third degree.

The PSR also indicated that Marrero pleaded guilty to simple assault following two attacks on his wife in 2004. The transcript of Marrero's guilty plea colloquy states, in relevant part:

> [Assistant District Attorney]: Your Honor, the defendant is charged with two separate incidents of simple assault. On Information 2804-04, the date of May 29 of 2004 . . . the defendant was seen placing his hands on the victim's neck. The victim's name

3

is Lucy Marrero. And he did, at that time, threaten serious bodily injury. On Information 38 –

The Court: Do you admit those facts?

The Defendant: Yes, Sir.

[Assistant District Attorney]: On Information 3839-04, the date was April 27, 2004, . . . the defendant grabbed Mrs. Marrero by the neck, attempting to drag her upstairs to the second floor. When she tried to make a phone call, he ripped the phone cord out of the wall as she was attempting to call 911.

The Court: Do you admit those facts?

The Defendant: Yes, Sir.

The Probation Office concluded that Marrero's convictions for third-degree murder and simple assault constituted "crimes of violence" under the Guidelines. Accordingly, the PSR classified Marrero as a career offender, which increased his offense level from 21 to 32. After a three-point reduction for acceptance of responsibility, Marrero's total offense level was 29. The career offender enhancement also increased his criminal history category from IV to VI. *See* USSG § 4B1.1(b). This resulted in a final Guidelines range of 151 to 188 months' imprisonment. Had Marrero not been deemed a career offender, his Guidelines range would have been 57 to 71 months.

Marrero objected to the career offender classification, arguing that under Pennsylvania law neither third-degree

4

murder nor simple assault qualifies as a crime of violence because "a conviction for mere recklessness cannot constitute a crime of violence." The District Court disagreed, holding that he was a career offender under USSG § 4B1.1. According to the District Court, Marrero's simple assault conviction was a crime of violence because: (1) our decision in *United States v. Johnson*, 587 F.3d 203 (3d Cir. 2009), established that intentional or knowing simple assault under Pennsylvania law is a crime of violence; and (2) the transcript of Marrero's guilty plea colloquy "indicated that he pled guilty to an intentional and knowing violation of the simple assault statute." As for Marrero's third-degree murder conviction, the District Court found that it constituted a crime of violence because "murder" is expressly enumerated as such in Application Note 1 to USSG § 4B1.2.

Having found the career offender designation appropriate in Marrero's case, the District Court agreed with the Probation Office that his applicable Guidelines range was 151 to 188 months' imprisonment. Marrero sought a below-Guidelines sentence, and the Government opposed that request. Applying the factors set forth in 18 U.S.C. § 3553(a), the District Court determined that a substantial downward variance was warranted and sentenced Marrero to 96 months' imprisonment and three years of supervised release.

Marrero timely appealed and has raised one issue: his classification as a career offender. If either of his prior offenses is not a crime of violence, Marrero's sentence, which was based in part on his career offender designation, cannot stand. *See, e.g.*, *United States v. Keller*, 666 F.3d 103, 109 (3d Cir. 2011); *United States v. Friedman*, 658 F.3d 342, 359 (3d Cir. 2011). We affirmed the sentence in *United States v.*

5

*Marrero*, 677 F.3d 155 (3d Cir. 2012), and Marrero filed a petition for writ of certiorari. The Supreme Court granted the petition, vacated our judgment, and remanded for further consideration in light of its recent decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013). *Marrero v. United States*, 133 S. Ct. 2732 (2013).[1] Following remand, we requested, and the parties submitted, letter briefs regarding the impact of *Descamps* on Marrero's appeal. Having reviewed *Descamps* and the parties' arguments, this appeal is ripe again.

## II

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). Whether a prior conviction constitutes a crime of violence for purposes of the career offender Guideline is a question of law over which we exercise plenary review. *E.g.*, *Johnson*, 587 F.3d at 207.

## III

Our legal analysis begins with the text of the relevant Guidelines. Under USSG § 4B1.1, one is a career offender if:

> (1) [he] was at least eighteen years old at the time [he] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) [he] has at least two prior felony convictions of either a

---

[1] Justice Alito, joined by Justice Kennedy, dissented from the Court's order.

crime of violence or a controlled substance offense.

Under the Guidelines, "crime of violence"

means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(a). Finally, Application Note 1 to USSG § 4B1.2 provides that "'[c]rime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling."

A

The first question presented is whether Marrero's Pennsylvania simple assault conviction is a qualifying offense for purposes of the career offender Guideline. *See* USSG § 4B1.1. Under Pennsylvania law, "[a] person is guilty of [simple] assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury; (2) negligently causes bodily injury to another with a deadly weapon; [or] (3) attempts by physical menace to put another in fear of

7

imminent bodily injury." 18 Pa. Cons. Stat. Ann. § 2701(a). Apart from "aggravated assault," assault is not enumerated in either § 4B1.2(a)(2) of the Guidelines or the application note thereto, and neither party argues that Marrero's simple assault conviction could qualify as a crime of violence under § 4B1.2(a)(1). Therefore, we must determine whether Marrero's simple assault offense was a crime of violence under the so-called "residual clause" in § 4B1.2(a)(2), which refers to offenses that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another."

As we noted in *Johnson*, the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), altered the analytical framework for residual clause cases.[2] 587 F.3d at

---

[2] Although *Begay* and several related cases involved sentencing enhancements under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), rather than the career offender Guideline, they nevertheless bind our analysis. "Precedent . . . requires the application of case law interpreting 'violent felony' in ACCA to 'crime of violence' in U.S.S.G. § 4B1.2[] because of the substantial similarity of the two sections." *United States v. Herrick*, 545 F.3d 53, 58 (1st Cir. 2008); *accord, e.g.*, *Hopkins v. United States*, 555 U.S. 1132 (2009) (mem.) (remanding a career offender case for consideration after the Supreme Court's ACCA opinion in *Chambers v. United States*, 555 U.S. 122 (2009)); *United States v. Hopkins*, 577 F.3d 507, 511 (3d Cir. 2009) ("[T]he definition of a violent felony under the ACCA is sufficiently similar to the definition of a crime of violence under the Sentencing Guidelines that authority interpreting one is generally applied to the other . . . .").

207. Reasoning that the residual clause must be interpreted with reference to the enumerated crimes that precede it—namely, burglary, arson, extortion, and crimes involving the use of explosives—the Supreme Court concluded that the residual clause "covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Begay*, 553 U.S. at 142 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Accordingly, "[p]ost-*Begay*, to qualify as a crime of violence [under the residual clause] the crime in question 'must (1) present a serious potential risk of physical injury *and* (2) be "roughly similar, in kind as well as degree of risk posed, to the examples [of burglary, arson, extortion, or use of explosives] themselves."'" *Johnson*, 587 F.3d at 207–08 (third alteration in original) (quoting *United States v. Polk*, 577 F.3d 515, 518 (3d Cir. 2009)). And "[a] crime is similar in kind to one of the enumerated examples if it 'typically involve[s] purposeful, violent, and aggressive conduct.'" *Id.* at 208 (quoting *Begay*, 553 U.S. at 144–45).

To determine whether Marrero's case satisfies the residual clause, we first apply the categorical approach prescribed by the Supreme Court in *United States v. Taylor*, 495 U.S. 575, 602 (1990). This approach requires us to ask "whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *James v. United States*, 550 U.S. 192, 202 (2007); *accord Johnson*, 587 F.3d at 208. In *Begay*, the Court concluded that the offense of driving under the influence of alcohol did not meet these residual-clause criteria. 553 U.S. at 144–48. After *Begay*, "a conviction for mere recklessness cannot constitute a crime of violence" under the residual clause. *United States v. Lee*, 612 F.3d 170, 196 (3d Cir.

9

2010). As we have explained, the *Begay* Court's "repeated invocation of 'purposefulness,' and the contrast the Court drew between that state of mind and negligence or recklessness, suggest that a crime committed recklessly is not a crime of violence." *Johnson*, 587 F.3d at 210 n.8. Our sister circuits that have considered this question have reached the same conclusion. *See id.* (listing cases).

We have previously applied *Begay* and *Taylor* to determine whether a conviction for simple assault under Pennsylvania law qualifies as a crime of violence under the residual clause of USSG § 4B1.2(a)(2). In *Johnson*, we held that only "an intentional or knowing violation of subsection (a)(1) of [§ 2701] may qualify as a crime of violence 'in the ordinary case.'" 587 F.3d at 210–12. We reasoned that "there can be no doubt that simple assault is at least as violent and aggressive as the enumerated crimes because a defendant who intentionally or knowingly commits [simple assault] intends to impair the victim's physical condition or cause her substantial pain, [and] no such objective is required by the enumerated crimes." *Id.* at 212.

Whether Marrero's prior conviction was for intentional or knowing simple assault, rather than merely reckless or negligent iterations of the crime, depends on the statutory elements of which Marrero was actually convicted. *Id.* at 208; *accord United States v. Stinson*, 592 F.3d 460, 462 (3d Cir. 2010). To make this determination, we apply a modified categorical approach, in which we are "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). Whether one of these *Shepard*-approved

10

documents "contains sufficient information to permit a conclusion about the character of the defendant's previous conviction will vary from case to case." *Johnson*, 587 F.3d at 213.

Marrero contests the applicability of the modified categorical approach, arguing that Pennsylvania's simple assault statute is "indivisible." This definitional argument is essential to Marrero's appeal because *Descamps* held that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements." *Descamps*, 133 S. Ct. at 2282. On the other hand, courts may apply the modified categorical approach to "divisible statutes," which "set[] out one or more elements of the offense in the alternative . . . ." *Id.* at 2281. Unlike the California statute at issue in *Descamps*, *see* Cal. Penal Code § 459, a defendant may be convicted of Pennsylvania simple assault if his actions were accompanied by one of three different mental states—intent, knowledge, or recklessness. Because the Pennsylvania statute "list[s] potential offense elements in the alternative," it is "divisible," and the modified categorical approach applies. *See Descamps*, 133 S. Ct. at 2283.[3]

---

[3] Our Court and other Courts of Appeals have applied the modified categorical approach to examine divisible statutes that feature multiple *mens rea* elements in order to determine whether a defendant was convicted of a crime of violence. *See, e.g.*, *Johnson*, 587 F.3d at 214 (advocating use of modified categorical approach to examine *Shepard*-approved documents that might "demonstrate the *mens rea* to which [defendant] pled guilty"); *see also United States v.*

In the alternative, Marrero argues that the District Court's inquiry was limited to determining only the elements of § 2701(a) to which he pleaded guilty. He claims that the District Court exceeded this boundary by looking to specific facts established during the colloquy rather than solely to any statutory elements set forth in the record. In support, Marrero cites a statement by the Court of Appeals for the Seventh Circuit in *United States v. Woods*, 576 F.3d 400 (7th Cir. 2009), that "the additional materials permitted by *Shepard* may be used only to determine *which* crime within a statute the defendant committed, not *how* he committed the crime," *id.* at 405.

Our inquiry under *Shepard*'s modified categorical approach is not as constrained as Marrero suggests. It is well-established that where a statute sets forth "multiple, alternative versions of the crime," *Descamps*, 133 S. Ct. at 2284, the sentencing court may resort to *Shepard*-approved documents to "determine which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction." *Nijhawan v. Holder*, 557 U.S. 29, 37 (2009); *accord Descamps*, 133 S. Ct. at 2284; *Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010); *Chambers v. United States*, 555 U.S. 122, 126 (2009).

---

*Espinoza*, 733 F.3d 568, 571 (5th Cir. 2013); *United States v. Johnson*, 675 F.3d 1013, 1017–18 (6th Cir. 2012) (examining indictment and jury instructions to establish whether defendant was charged and convicted of purposeful or reckless conduct); *United States v. Ossana*, 638 F.3d 895, 903 (8th Cir. 2011); *United States v. Clinton*, 591 F.3d 968, 973 (7th Cir. 2010).

In *Nijhawan*, the Supreme Court expounded upon the proper inquiry in these cases, explaining:

> [S]ometimes a separately numbered subsection of a criminal statute will refer to several different crimes, each described separately. And it can happen that some of these crimes involved violence while others do not. A single Massachusetts statute section entitled "Breaking and Entering at Night," for example, criminalizes breaking into a "building, ship, vessel or vehicle." Mass. Gen. Laws, ch. 266, § 16 (West 2006). In such an instance, we have said, a court must determine whether an offender's prior conviction was for the violent, rather than the nonviolent, break-ins that this single five-word phrase describes (*e.g.*, breaking into a building rather than a vessel), by examining "the indictment or information and jury instructions," or, if a guilty plea is at issue, by examining the plea agreement, plea colloquy, or "some comparable judicial record" of the factual basis for the plea.

557 U.S. at 33. Moreover, *Shepard* authorizes sentencing courts to look to "any explicit *factual finding* by the trial judge to which the defendant assented," which includes far more than merely the precise statutory provision to which the defendant pleaded guilty. *See Shepard*, 544 U.S. at 16 (emphasis added).

Applying these principles to Marrero's case, we conclude that the District Court properly examined Marrero's simple assault plea colloquy transcript—a *Shepard*-approved

13

document—to determine whether he pleaded guilty to intentional, knowing, or reckless assault. Pennsylvania's simple assault statute expressly lists those three different ways of violating § 2701(a). Upon examining the plea colloquy transcript, the District Court correctly concluded that Marrero's conviction was for intentional (or, at the very least, knowing) simple assault. Marrero admitted to placing his hands around his wife's neck and attempting to pull her up a flight of stairs. This constituted intent to cause bodily injury, which we have already held qualifies as a crime of violence. *Johnson*, 587 F.3d at 212.

B

Because Marrero could not properly be designated a career offender unless both of his state convictions were "crimes of violence," we now consider whether his third-degree murder conviction so qualified. Under Pennsylvania's general homicide statute, 18 Pa. Cons. Stat. Ann. § 2501(a), "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." Section 2501(b) classifies homicides as either "murder, voluntary manslaughter, or involuntary manslaughter." Pennsylvania recognizes three types of murder:

> (a) Murder of the first degree—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

> (b) Murder of the second degree—A criminal homicide constitutes murder of the second degree while defendant was engaged as a

14

principal or an accomplice in the perpetration of a felony.

(c) Murder of the third degree—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

*Id.* § 2502. Although the statute itself only defines third-degree murder as a catch-all without describing the elements of the offense, the Pennsylvania Superior Court has specified that third-degree murder is "an unlawful killing with malice but without specific intent to kill." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa. Super. Ct. 2011); *accord Commonwealth v. Tielsch*, 934 A.2d 81, 84 n.3 (Pa. Super. Ct. 2007). And "malice" is defined as

"wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured," [and] malice may be found where the defendant consciously disregarded an unjustifiable and extremely high risk that his actions might cause serious bodily injury.

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. Ct. 2001) (quoting *Commonwealth v. Cottam*, 616 A.2d 988, 1004 (Pa. Super. Ct. 1992)); *see also Commonwealth v. Kling*, 731 A.2d 145, 148 (Pa. Super. Ct. 1999) ("A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could

15

reasonably anticipate death or serious bodily injury would likely and logically result.").

Based on this definition, Marrero cites *Begay* to argue that third-degree murder cannot be a crime of violence because malice, the essential *mens rea*, might entail recklessness only. Marrero's reliance upon *Begay* is misplaced, however, because *Begay*'s prohibition on counting reckless crimes as crimes of violence applies only in residual clause cases. *See, e.g.*, *Sykes v. United States*, 131 S. Ct. 2267, 2275–76 (2011) (describing *Begay* as a decision "concerning the reach of ACCA's residual clause"); *United States v. Angiano*, 602 F.3d 828, 829 (7th Cir. 2010) (finding *Begay* "inapposite" to a case involving the enumerated offense of burglary of a dwelling under § 2L1.2 of the Guidelines because "*Begay* . . . only classified the prior convictions under the residual clause"); *United States v. Patillar*, 595 F.3d 1138, 1140 (10th Cir. 2010) (describing *Begay* as a case interpreting the residual clause); *see also United States v. Peterson*, 629 F.3d 432, 437 (4th Cir. 2011) (holding that the generic definition for the enumerated crime of violence of "manslaughter" was a "homicide that 'is committed recklessly'" (quoting Model Penal Code § 210.3 (1962))). Thus, *Begay* does not control this case. Rather, whether Marrero's third-degree murder conviction qualifies as a crime of violence depends on the enumeration of "murder" in Application Note 1 to § 4B1.2.

Application Note 1 expressly states that the term "'[c]rime of violence' includes murder." Consistent with the categorical approach prescribed by *Taylor* for predicate offenses expressly listed as "crimes of violence," we previously held that "no inquiry into the facts of the predicate offense is permitted when a predicate conviction is

16

enumerated as a 'crime of violence' in [then-]Application Note 2 to § 4B1.2." *United States v. McQuilkin*, 97 F.3d 723, 728 (3d Cir. 1996) (holding that a defendant's aggravated assault conviction, even though based on reckless conduct, counted as a crime of violence because aggravated assault was enumerated in the application note); *accord United States v. McClenton*, 53 F.3d 584 (3d Cir. 1995) (holding that burglary of an unoccupied hotel room was a crime of violence because burglary of a dwelling was enumerated in § 4B1.2). Since we decided *McQuilkin*, nothing has called into question our prior conclusion that offenses listed in what is now Application Note 1 to § 4B1.2 should be considered "enumerated" offenses for purposes of the crime-of-violence analysis.

First, basic interpretative principles and a plain reading of Application Note 1 compel the same conclusion now as we reached in *McQuilkin*. "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993); *accord Johnson*, 587 F.3d at 207. Application Note 1 does not conflict with federal law and is not an erroneous reading of USSG § 4B1.2. It merely supplements the numbered provisions of § 4B1.2 and unambiguously states that "'crime of violence' *includes*" ten specific crimes. USSG § 4B1.2 cmt. n.1 (emphasis added); *cf. Taylor*, 495 U.S. at 597 ("[I]f Congress had meant to include only an especially dangerous subclass of burglaries as predicate offenses, it is unlikely that it would have used the unqualified language '*is* burglary . . .' in § 924(e)(2)(B)(ii) [of ACCA].").

17

Furthermore, several of our sister circuits have concluded or suggested that the ten offenses listed in Application Note 1 are "enumerated" for purposes of the crime-of-violence analysis. *See United States v. Lockley*, 632 F.3d 1238, 1242 (11th Cir. 2011) (finding that robbery is an enumerated offense); *Peterson*, 629 F.3d at 436–37 (treating "manslaughter" in U.S.S.G. § 4B1.2(a) cmt. 1 as an enumerated offense); *Patillar*, 595 F.3d at 1140 ("Nor is larceny from the person one of the offenses enumerated in either § 4B1.2(a)(2) . . . *or the application note*, *see id.* § 4B1.2 cmt n.1 . . . ." (emphasis added)); *United States v. Walker*, 595 F.3d 441, 443–44 (2d Cir. 2010) ("[The] application note specifically includes 'robbery' as a 'crime of violence' under § 4B1.2(a). . . . [T]he Supreme Court held in *Taylor* that where a specific offense—in *Taylor*, burglary—is listed as a qualifying violent felony, 'then the trial court need find only that the state statute corresponds in substance to the generic meaning of burglary.'" (quoting *Taylor*, 495 U.S. at 599)); *United States v. Otero*, 495 F.3d 393, 401 (7th Cir. 2007) ("Given that robbery is enumerated as a 'crime of violence' under the Guidelines and [the defendant's] conviction for strong-armed robbery was classified as an adult conviction, the district court did not err in finding that [the defendant] qualified as a career offender.").

Consistent with these precedents, we reaffirm that offenses listed in Application Note 1 are "enumerated" for purposes of the crime-of-violence analysis. The District Court reached the same conclusion, but erred when it held that the enumeration of "murder" was alone sufficient to render third-degree murder under Pennsylvania law a crime of violence. As we shall explain, the Court should have

proceeded to apply the additional steps set forth by the Supreme Court in *Taylor*.

In *Taylor* the Court concluded that Congress did not intend for offenses enumerated as crimes of violence to take on whatever meaning state statutes ascribe to them; rather, Congress sought to use "uniform, categorical definitions . . . regardless of technical definitions and labels under state law." *Taylor*, 495 U.S. at 590. The Court reasoned that it was "implausible that Congress intended the meaning of 'burglary' for purposes of [ACCA's] § 924(e) to depend on the definition adopted by the State of conviction." *Id.* The Court thus identified a generic definition of burglary that Congress likely intended in the statute, *id.* at 596–99, and sought to compare that definition with "burglary" under Missouri law, *id.* at 602. Unable to discover in the record which Missouri statute formed the basis for Taylor's prior convictions, it remanded for further proceedings. *Id.*

The *Taylor* analysis must be applied in enumerated-offense cases like this one. "Where, as here, the Guidelines specifically designate a certain offense as a 'crime of violence,' we compare the elements of the crime of conviction to the generic form of the offense as defined by the States, learned treatises, and the Model Penal Code." *Lockley*, 632 F.3d at 1242; *accord Peterson*, 629 F.3d at 435–37; *United States v. Ramon Silva*, 608 F.3d 663, 665 (10th Cir. 2010); *Walker*, 595 F.3d at 443–44; *United States v. Watkins*, 54 F.3d 163, 166 (3d Cir. 1995) (comparing a Pennsylvania burglary statute to the "generic" definition of burglary announced in *Taylor*). In other words, "[f]irst, a court must distill a 'generic' definition of the predicate offense based on how the offense is defined 'in the criminal codes of most states.'" *Peterson*, 629 F.3d at 436 (emphasis

omitted) (quoting *Taylor*, 495 U.S. at 598). "Second, after finding the generic form of the predicate offense, a court must determine whether the defendant's prior conviction constituted a conviction of the generic offense . . . by comparing the *elements* of the crime of conviction with the generic offense." *Id.* So long as the statutory definition of the prior conviction "substantially corresponds" to the generic definition of the offense, the defendant's prior offense qualifies as a crime of violence. *Taylor*, 495 U.S. at 602; *accord, e.g.*, *Ramon Silva*, 608 F.3d at 665. "But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot" constitute a conviction of the generic offense. *Descamps*, 133 S. Ct. at 2283. We apply this enumerated-offense approach to cases, like this one, in which the crime of conviction is listed in either § 4B1.2(a)(2) or Application Note 1 to § 4B1.2.

In Marrero's case, we begin by adopting a generic definition for "murder." The goal of a generic definition of an enumerated offense is to capture the "offense as envisioned by the Guidelines' drafters," *Lockley*, 632 F.3d at 1242, by looking to the Model Penal Code (MPC), state laws, and learned treatises. *See, e.g.*, *Taylor*, 495 U.S. at 598; *Lockley*, 632 F.3d at 1242; *Peterson*, 629 F.3d at 436; *Walker*, 595 F.3d at 446. As far as we are aware, no federal court has yet adopted a generic definition of murder for the crime-of-violence analysis.

The MPC is an ideal starting point. Section 210.2 of the MPC provides that criminal homicide constitutes murder when:

> (a)     it is committed purposely or knowingly; or

(b) it is committed recklessly under circumstances manifesting extreme indifference to the value of human life. Such recklessness and indifference are presumed if the actor is engaged or is an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, rape or deviate sexual intercourse by force or threat of force, arson, burglary, kidnapping or felonious escape.

Similarly, *Black's Law Dictionary* defines "murder" as "[t]he killing of a human being with malice aforethought." *Id.* at 1114 (9th ed. 2009). "Depraved-heart murder" is "a murder resulting from an act so reckless and careless of the safety of others that it demonstrates the perpetrator's complete lack of regard for human life." *Id.* "Unintentional murder" is "[a] killing for which malice is implied because the person acted with intent to cause serious physical injury or knew that the conduct was substantially certain to cause death or serious physical injury." *Id.* at 1114–15.

As with burglary in *Taylor*, 495 U.S. at 598, state-law definitions of murder vary widely but share a common definitional strand. The majority of state murder statutes criminalize at least three types of murder: (1) intentional killing; (2) killing during the commission of a felony; and (3) killing that, although unintentional, occurs in the course of dangerous conduct that demonstrates a reckless or malignant disregard for serious risks posed to human life.[4] We

---

[4] All fifty states and the District of Columbia recognize intentional or premeditated murder, and forty-four states and the District of Columbia define a felony murder offense. At

21

least thirty states define a form of unintentional murder involving a substantial likelihood of death, indifference (often "extreme indifference") to the value of human life, an abandoned, malignant, or depraved heart, express or implied malice, or recklessness. *See* Ala. Code § 13A-6-2 (2011); Alaska Stat. Ann. §§ 11.41.100, .110 (West 2007); Ariz. Rev. Stat. Ann. §§ 13-1104 to -1105 (West 2010); Ark. Code Ann. §§ 5-10-102 to -103 (West 2008); Cal. Penal Code §§ 187–188 (West 2012); Colo. Rev. Stat. Ann. § 18-3-102 (West 2004); Conn. Gen. Stat. Ann. §§ 53a-54a, -54c (West 2007); Del. Code Ann. tit 11, §§ 635–636 (West 2010); D.C. Code § 22-2101 (2001); Fla. Stat. Ann. § 782.04 (West 2007); Ga. Code Ann. § 16-5-1 (West 2009); Haw. Rev. Stat. § 707-701 (West 2008); Idaho Code Ann. §§ 18-4001, -4003 (West 2011); 720 Ill. Comp. Stat. Ann. 5/9-1 (West 2002); Ind. Code Ann. § 35-42-1-1 (West 2004); Iowa Code Ann. §§ 701.1–.3 (West 2003); Kan. Stat. Ann. §§ 21-5402 to -5403 (West 2008); Ky. Rev. Stat. Ann. § 507.020 (West 2006); La. Rev. Stat. Ann. § 14:30–:30.1 (West 2007); Me. Rev. Stat. Ann. tit. 17, §§ 201–202 (2006); Md. Code Ann., Criminal Law §§ 2-201, -204 (West 2002); Mass. Gen. Laws Ann. ch. 265, § 1 (West 2008); Mich. Comp. Laws Ann. §§ 750.316–.317 (West 2004); Minn. Stat. Ann. §§ 609.185, .195 (West 2009); Miss. Code Ann. § 97-3-19 (West 2011); Mo. Ann. Stat. §§ 565.020–.021 (West 1999); Mont. Code Ann. § 45-5-102 (2009); Neb. Rev. Stat. §§ 28-303 to -304 (2009); Nev. Rev. Stat. Ann. § 200.010 (West 2000); N.H. Rev. Stat. Ann. §§ 630:1-a to -b (2007); N.J. Stat. Ann. § 2C:11-3 (West 2005); N.M. Stat. Ann. § 30-2-1 (West 2003); N.Y. Penal Law §§ 125.25, .27 (McKinney's 2009); N.C. Gen. Stat. Ann. § 14-17 (West 2000); N.D. Cent. Code Ann. § 12.1-16-01 (West 2008); Ohio Rev. Code Ann.

incorporate each of these pervasive aspects of contemporary, widely accepted definitions of murder. *Cf. Taylor*, 495 U.S. at 598 (concluding that "[a]lthough the exact formulations vary, the generic, contemporary meaning of burglary [should] contain[] at least" several common elements appearing in the examined sources). Accordingly, we hold that murder is generically defined as causing the death of another person either intentionally, during the commission of a dangerous felony, or through conduct evincing reckless and depraved indifference to serious dangers posed to human life.

We further hold that the meaning of third-degree murder under Pennsylvania law "substantially corresponds" to the third prong of this generic definition. In Pennsylvania, third-degree murder is "an unlawful killing with malice but without specific intent to kill." *Dunphy*, 20 A.3d at 1219. Malice, in turn, involves "hardness of heart, cruelty, and recklessness of consequences." *DiStefano*, 782 A.2d at 582. Malice exists "where the defendant consciously disregarded an unjustifiable and extremely high risk that his actions might

---

§ 2903.02 (West 2006); Okla. Stat. Ann. tit. 21, §§ 701.7–.8 (West 2002); Or. Rev. Stat. Ann. § 163.005 (West 2003); 18 Pa. Cons. Stat. Ann. § 2502 (1998); R.I. Gen. Laws Ann. § 11-23-1 (West 2012); S.C. Code Ann. § 16-3-10 (2003); S.D. Codified Laws §§ 22-16-4, -7 (2006); Tenn. Code Ann. § 39-13-202 (West 2011); Tex. Penal Code Ann. § 19.02(b) (West 2003); Utah Code Ann. § 76-5-203 (West 2004); Vt. Stat. Ann. tit. 13, § 2301 (West 2007); Va. Code Ann. §§ 18.2-32 to -33 (West 2012); Wash. Rev. Code §§ 9A.32.030, .050 (West 2009); W. Va. Code Ann. § 61-2-1 (West 2002); Wis. Stat. Ann. §§ 940.01-.03 (West 2005); Wyo. Stat. Ann. §§ 6-2-101, -104 (West 2007).

cause serious bodily injury." *Id.* Pennsylvania courts have held that the "reckless disregard for consequences" essential to malice requires that the defendant "display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result." *Kling*, 731 A.2d at 148. This *mens rea* requirement for third-degree murder mirrors the "reckless and depraved indifference to the serious dangers posed to human life" in the generic definition we have identified. Thus, third-degree murder under Pennsylvania law is equivalent to the enumerated offense of "murder" and therefore qualifies as a crime of violence under the Guidelines.

IV

Because Marrero's third-degree murder and simple assault convictions both qualify as crimes of violence under USSG § 4B1.2, he was properly designated a career offender under USSG § 4B1.1. It follows that Marrero's Guidelines range was properly calculated and that the District Court did not err. Accordingly, we will affirm.

24