NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3917
_____

UNITED STATES OF AMERICA

v.

JAMAAL L. MIKE,
                    Appellant
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Criminal No. 3-09-cr-00036-001)
District Judge: Hon. Curtis V. Gomez


_____


Argued: December 14, 2017

Before: SMITH, *Chief Judge*, MCKEE, and SCIRICA, *Circuit Judges*

(Filed: November 27, 2018)

Brendan A. Hurson, Esq. [ARGUED]
Kia D. Sears, Esq.
Office of Federal Public Defender
1336 Beltjen Road
Suite 202, Tunick Building
St. Thomas, VI  00802

Omodare B. Jupiter, Esq.
Office of the Federal Public Defender
4094 Diamond Ruby
Suite 5
Christiansted, VI  00820

        *Counsel for Appellant*

Meredith J. Edwards, Esq. [ARGUED]
David W. White, Esq.
Office of United States Attorney
5500 Veterans Drive, Suite 260
United States Courthouse
St. Thomas, VI  00802

      *Counsel for Appellee*

————————

OPINION[*]

————————

**SCIRICA**, *Circuit Judge*

While on supervised release for a firearms conviction, Jamaal Mike shot an acquaintance.  The District Court revoked his supervision and imposed a term of 18 months' imprisonment.  Mike appeals, contending: the District Court (1) did not have jurisdiction under the delayed revocation provision, *see* 18 U.S.C. § 3583(i), to revoke his supervised release after the term had expired; (2) violated his due process rights; (3) ruled based on insufficient evidence; and, (4) erroneously concluded attempted murder and assault with a deadly weapon under Virgin Islands law qualify as "crimes of violence." Because we conclude the District Court had jurisdiction and did not err, we will affirm.

**I.**

Mike was convicted of receipt of a firearm outside the state of residency on January 29, 2010.  He was sentenced to 51 months' imprisonment and a three-year term of supervised release that was set to expire on June 23, 2016.  On May 23, 2016, while he

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

was still on supervised release, Mike was arrested by Virgin Islands Police for attempted murder, assault, unauthorized possession of a firearm during the commission of a crime of violence, and unauthorized possession of a firearm. Those charges related to an altercation between Mike and Kadeem Barnes, during which Mike allegedly shot Barnes. Shortly after the shooting, Barnes repeatedly identified Mike as the shooter to a Virgin Islands police officer.

A probation officer filed an unsworn memorandum with the District Court, which stated Barnes identified Mike as the man who shot him and noted Mike faced five charges. Probation attached an arrest warrant from the Superior Court of the Virgin Islands and an arrest "report" from the Virgin Islands Police Department, documenting Mike's arrest.

Based on the submission, the District Court signed an arrest warrant for Mike, stating he violated the condition that "[d]efendant shall not possess a firearm." App. 76. Mike appeared before a Magistrate Judge for an initial appearance and was informed of the alleged violation. On June 24, 2016, after the expiration of Mike's term of supervised release, the probation officer filed a second memorandum with the court, alleging Mike committed two "A" grade violations: commission of a "Federal, State, or Local crime," and possession of a "firearm." App. 77–78. Mike appeared before a Magistrate Judge, who concluded probable cause existed to find Mike violated those two conditions.

Mike and the government then appeared before the District Court on August 18 for a revocation hearing, during which the government stated it was not pursuing the Grade A violations and moved to have probation amend the violations to include two

3

Grade C violations. The government also stated it would not call Barnes as a witness. Almost a week later, probation amended the second memorandum to include the Grade C violations, and the District Court granted the amendment *nunc pro tunc* to the August 18 revocation hearing.

During Mike's scheduled September 14th revocation hearing, the District Court announced that, despite the government's position, Mike faced four violations including the original two Grade A violations. The revocation hearing was continued to provide Mike adequate notice of the violations. During the final revocation hearing approximately one month later, the Virgin Islands police officer who investigated the shooting testified Barnes identified Mike as the shooter. Barnes refused to identify Mike as the perpetrator but did testify he saw Mike at the store on the day of the shooting.

The District Court determined, by a preponderance of the evidence, that Mike shot Barnes and concluded Mike violated a federal, state, or local law, possessed a firearm, and failed to advise probation within 72 hours of his questioning or arrest. The District Court imposed a sentence of 18 months' imprisonment and 400 hours of community service. Mike appealed.

## II.[1]

Mike challenges the revocation of his supervised release on four grounds. We consider each in turn.

### A.

---

[1] The District Court's jurisdiction is contested but would arise under 48 U.S.C. § 1612, 18 U.S.C. § 3583, and 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1) and (a)(2).

Mike raises two issues concerning the District Court's jurisdiction under 18 U.S.C. § 3583(i).  We review the District Court's exercise of jurisdiction *de novo*.  *See United States v. Merlino*, 785 F.3d 79, 82 (3d Cir. 2015).  Under section 3583(i), a court's jurisdiction over supervised release violations extends beyond the term of supervised release if certain statutory requirements are met:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i).  Mike first contends the arrest warrant, issued before the expiration of his supervised release term, did not trigger extended jurisdiction under section 3583(i) because it was not supported by oath or affirmation.  Second, he asserts the violations were improperly amended after the expiration of his supervised release term.

As to the oath or affirmation requirement, we need not decide whether an arrest warrant needs to be supported by oath or affirmation to trigger extended jurisdiction under section 3583(i).[2]  The federal arrest warrant was issued based on the first revocation petition, which incorporated the Virgin Islands arrest warrant and the affidavit

---

[2]	The United States Courts of Appeals for the First, Fifth, and Eighth Circuits have held a warrant for arrest of an individual on supervised release does not require support by oath or affirmation. *See United States v. Collazo-Castro*, 660 F.3d 516, 522 (1st Cir. 2011); *United States v. Garcia-Avalino*, 444 F.3d 444, 447–48 (5th Cir. 2006); *United States v. Hacker*, 450 F.3d 808, 816 (8th Cir. 2006); *see also United States v. Madden*, 515 F.3d 601, 608 (6th Cir. 2008) (holding that it was not plain error where a warrant for violation of supervised release was based on an unsworn information).  In contrast, the Ninth Circuit requires that a warrant for section 3583(i) be supported by oath or affirmation.  *United States v. Vargas-Amaya*, 389 F.3d 901, 907 (9th Cir. 2004).

that supported the arrest warrant. The supporting affidavit was sworn to by a detective employed by the Virgin Islands Police Department. Because the packet included an affidavit in this case, the warrant validly triggered extended jurisdiction.

Having concluded the warrant was sufficient to extend jurisdiction, we must now decide whether the District Court allowed improper amendment of the violations after expiration of Mike's supervised release.[3] It did not.

The Second Circuit addressed the issue of whether a court's revocation authority is limited to the violation alleged prior to the expiration of supervised release in *United States v. Edwards*, 834 F.3d 180 (2d Cir. 2016), and concluded it was not. *See id.* at 193 (exercising *de novo* review). In *Edwards*, the defendant argued that "such a violation" in section 3583(i) was ambiguous because it could be interpreted as referring back to the first clause and requiring the charged violation and the proved violation be the same. *Id.* Rejecting that reading of the statute, the Second Circuit concluded the clause was not ambiguous because Congress "would have referred simply to 'such violation,' without use of the indefinite article, 'a,' which generally implies the possibility of a larger number than one." *See id.* Instead, the Second Circuit determined the phrase referred to a type of violation, i.e., a violation of a condition of supervised release. *See id.* Although it expressly declined to decide the outermost extent of this jurisdiction, it held that the statute allowed district courts to revoke supervised release on the basis of violations when "those violations involve conduct related to the violation charged in the timely warrant,

---

[3] We have held section 3583(i) is jurisdictional and accordingly not subject to equitable tolling. *See Merlino*, 785 F.3d at 86.

6

which conduct was disclosed to the defendant so as to afford adequate notice and opportunity to be heard." *Id.* at 194.[4]

We find the Second Circuit's reasoning persuasive and need not address the outermost extent of jurisdiction. An arrest warrant was issued in this case prior to the supervised release term's expiration based on a petition that stated the alleged violation as "[d]efendant shall not possess a firearm." App. 76. All of the subsequently added violations relate to the same incident—Barnes's shooting. Mike had adequate notice and an opportunity to be heard on the amended violations. Accordingly, the amendment in this case was not improper.[5]

**B.**

Mike contends the District Court violated his due process rights during the

---

[4]     The Fifth and Eleventh Circuits have similarly construed section 3583(i) to provide jurisdiction over violations of supervised release, even if those violations were not included in a timely warrant. The Fifth Circuit construed the inclusion of the indefinite article "a" as meaning that any violation committed during the term of supervised release can be added as long as a warrant or summons alleging a violation is timely filed. *See United States v. Naranjo*, 259 F.3d 379, 382–83 (5th Cir. 2001). The Fifth Circuit rejected the argument that an amended petition for violation is similar to a superseding indictment, which can only be considered timely if it does not broaden the charges, stating that section 3583(i) expressly extends the court's jurisdiction, while the return of a timely indictment merely tolls the statute of limitations as to those charges included in the indictment. *See id.* at 383. The Eleventh Circuit also determined that, once a defendant is before a court, "it ha[s] the power to consider any violation of the terms of the release and base a revocation on it." *United States v. Presley*, 487 F.3d 1346, 1349 (11th Cir. 2007).

[5]     Mike contends the original violation was dismissed before the arrest warrant was issued and thus could not be amended. But, after review of the record, we conclude the original violations were not dismissed, and the District Court had the authority to proceed on all of the violations before it. *Cf. United States v. Mejia-Sanchez*, 172 F.3d 1172, 1175 (9th Cir. 1999) ("As a result of [the relationship between the district court and defendant], a district court may *sua sponte* initiate revocation proceedings whenever it obtains information that a defendant has violated a condition of his release.").

7

revocation hearing by questioning witnesses and denying him the right to introduce Barnes's medical records. We review due process claims *de novo*. *United States v. Barnhart*, 980 F.2d 219, 222 (3d Cir. 1992). We conclude those actions did not violate Mike's due process rights.

In the somewhat analogous trial context, district courts may question witnesses but must not assume an advocacy role. *See United States v. Adedoyin*, 369 F.3d 337, 342 (3d Cir. 2004). Barnes was a largely uncooperative and reluctant witness. Although the District Court did take a slightly more active role, much of the questioning was aimed at having Barnes share additional details he would not provide under questioning by the government. The District Court did not assume the role of an advocate in its questioning.

We also conclude the District Court did not abuse its discretion in denying Mike the right to introduce Barnes's medical records. "[A]n individual's privacy interest in medical records must be balanced against the legitimate interest of others in obtaining disclosure." *United States v. Polan*, 970 F.2d 1280, 1285 (3d Cir. 1992). In *Polan*, we held requiring the prosecutor to disclose a witness's psychiatric records to the defense would be duplicative where the witness's psychiatric problems were explored effectively during cross-examination. *See id.*

In this case, the investigatory officer testified during the revocation proceeding that she knew Barnes had some mental condition and that she "used to see him talking to himself and walking around." App. 340. The officer testified Barnes's mother told her

he has schizophrenia and was not taking his medication at the time of the shooting.[6]

Because Barnes's mental health was already established as part of the investigatory

officer's testimony, introduction of his medical records would have been duplicative.

## C.

Mike challenges the sufficiency of the evidence against him. We review the

decision to revoke supervised release for abuse of discretion. *United States v. Maloney*,

513 F.3d 350, 354 (3d Cir. 2008). The District Court's factual findings are reviewed for

clear error. *United States v. Poelintz*, 372 F.3d 562, 565–66 & n.6 (3d Cir. 2004).

A supervised release violation must be proven by a preponderance of the evidence.

*See* 18 U.S.C. § 3583(e). The District Court heard testimony that Barnes identified Mike

as the shooter while in the hospital, wrote Mike's name down as the shooter, and

identified his picture from an array. Additionally, surveillance video showed Mike in the

store a few minutes before the shooting. The District Court weighed this evidence

against (1) a statement by a witness of the shooting—who did not testify—that provided a

description of the shooter inconsistent with Mike's appearance and (2) Barnes's conduct

during the hearing. Based on our review of the record, we conclude the District Court did

not abuse its discretion when it found the violation proven by a preponderance of the

evidence.

## D.

Finally, Mike contends the District Court erred when it concluded assault with a

---

[6] These statements were introduced as part of Mike's cross-examination of the investigatory officer, for the purpose of discrediting Barnes as a witness.

9

deadly weapon or attempted murder under the Virgin Islands Code qualified as crimes of violence and accordingly determined either one constituted a Grade A violation. "We review a District Court's interpretation of the Sentencing Guidelines de novo and its application of the Guidelines to the facts for clear error." *United States v. Woronowicz*, 744 F.3d 848, 850 (3d Cir. 2014).

Under the Sentencing Guidelines, Grade A violations include "conduct constituting . . . a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a crime of violence." U.S.S.G. § 7B1.1(a)(1). "Crime of violence" is defined in section 4B1.2. *Id.* cmt. 2. In turn, "crime of violence" is defined, in relevant part, as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 4B1.2(a)(1).

Mike's argument assumes the categorical approach, which involves the evaluation of elements of the generic offense without regard to actual conduct, applies. But in the revocation context, "the categorical approach does not apply, and district courts may consider a defendant's actual conduct." *United States v. Carter*, 730 F.3d 187, 192 (3d Cir. 2013). Thus, "the grade of the violation is to be based on the defendant's actual conduct." *Id.* (quotation marks omitted) (quoting U.S.S.G. § 7B1.1 cmt. n.1); *see also United States v. Golden*, 843 F.3d 1162, 1167 (7th Cir. 2016); *United States v. McNeil*, 415 F.3d 273, 278 (2d Cir. 2005). *But see United States v. Willis*, 795 F.3d 986, 992 (9th Cir. 2015) (applying the categorical approach).

Turning to Mike's actual conduct, the District Court found by a preponderance of

the evidence that Mike shot Barnes three times. Based on that finding, the District Court concluded Mike's conduct qualified as assault with a deadly weapon or attempted murder, which was charged, and that both offenses qualified as Grade A violations.[7] We agree.

## IV.

For the foregoing reasons, we will affirm the revocation of supervised release and sentence.

---

[7] Even if we engaged in the requested analysis, we would reach the same conclusion. We previously held murder "is generically defined as causing the death of another person either intentionally, during the commission of a dangerous felony, or through conduct evincing reckless and depraved indifference to serious dangers posed to human life." *United States v. Marrero*, 743 F.3d 389, 401 (3d Cir. 2014). We also held that Pennsylvania's murder statute, which defined third-degree murder as "an unlawful killing with malice but without specific intent to kill," substantially corresponded to the third prong of that generic definition. *Id.* at 401 (quoting *Commonwealth v. Dunphy*, 20 A.3d 1215, 1291 (Pa. Super. Ct. 2011)). Like Pennsylvania's statute, the Virgin Islands Code defines murder as "the unlawful killing of a human being with malice aforethought." 14 V.I. Code Ann. § 921.

Under the Guidelines, an attempt to commit a crime of violence is itself a crime of violence. U.S.S.G. § 4B1.2, cmt. 1. And like the generic definition of attempt, which requires "an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime," Model Penal Code § 5.01(1)(c), the standard for determining attempt liability, under Virgin Islands law, has been defined "to require proof that the perpetrator took a substantial step toward completion of the underlying crime," *Motta v. Virgin Islands*, 2004 U.S. Dist. LEXIS 25112, at *6 (D.V.I. 2004) (collecting cases). Thus, even employing a relaxed categorical approach, attempted murder under the Virgin Islands Code qualifies as a Grade A violation. This conclusion holds true under both the 2015 and 2016 versions of the Sentencing Guidelines. *See Marrero*, 743 F.3d at 399 ("[W]e reaffirm that offenses listed in Application Note 1 are 'enumerated' for purposes of the crime-of-violence analysis.").